This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36100

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JORGE L. CARDOZA, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jennifer E. Delaney, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# MEMORANDUM OPINION

**IVES, Judge.**

**{1}** After a jury trial, Defendant Jorge L. Cardoza, Jr., was convicted of one count of kidnapping in violation of NMSA 1978, Section 30-4-1 (2003); one count of conspiracy to commit kidnapping in violation of Section 30-4-1 and NMSA 1978, Section 30-28-2 (1979); one count of attempted first degree murder in violation of NMSA 1978, Sections 30-2-1(A)(2) (1994) and 30-28-1 (1963); three counts of aggravated battery in violation of NMSA 1978, Section 30-3-5(A), and (C) (1969); one count of child abuse in violation

of NMSA 1978, Section 30-6-1(D) (2009); and one count of aggravated fleeing from a law enforcement officer in violation of NMSA 1978, Section 30-22-1.1 (2003). Defendant appeals, arguing: (1) under principles of double jeopardy, that his conviction for attempt to murder Arielle Voorhies merges with his conviction for aggravated battery of Voorhies and that his conviction for aggravated battery of Kayla Burkhardt merges with his conviction of child abuse against Burkhardt; (2) that the evidence is insufficient to support his child abuse conviction; (3) that the district court abused its discretion by admitting recordings of calls between two of the victims and a 911 operator; and (4) that his sentence violates the Eighth Amendment.

**{2}**     We agree that allowing Defendant's convictions for attempted murder and aggravated battery of Voorhies to stand would violate Defendant's right to be free from double jeopardy. We reject Defendant's remaining arguments. Accordingly, we (1) remand to the district court with instructions to vacate one of Defendant's aggravated battery convictions and the sentence for that conviction and (2) affirm in all other respects.[1]

**DISCUSSION**

**I.       Double Jeopardy**

**A.      Standard of Review and General Principles of Double Jeopardy**

**{3}**     We review double jeopardy claims de novo, *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747, except "where factual issues are intertwined with the double jeopardy analysis," in which case "we review the trial court's fact determinations under a deferential substantial evidence standard of review[,]" *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737.

**{4}**     The double jeopardy clause "protects defendants from receiving multiple punishments for the same offense." *State v. Ramirez*, 2018-NMSC-003, ¶ 38, 409 P.3d 902 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant's argument, based on a double-description theory, is that "a single act result[ed] in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. In analyzing such challenges, we ask: (1) whether the conduct is unitary, and, if so, (2) whether the Legislature intended to punish the offenses separately. *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

**1.       Unitary Conduct**

---

1In this memorandum opinion, we limit our recitation of the facts and law that necessary to our disposition of the case.

**{5}** "Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616. The resolution of the unitary-conduct question "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). "[S]eparate punishments may be imposed if the offenses are separated by sufficient indicia of distinctness." *Id.* (internal quotation marks and citation omitted). In making this determination, "we consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *Id.* "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted).

## 2.     Legislative Intent

**{6}** "The sole limitation on multiple punishments is legislative intent[.]" *Franco*, 2005-NMSC-013, ¶ 12 (internal quotation marks and citation omitted). "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. If all elements of one statute are "subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *Silvas*, 2015-NMSC-006, ¶ 12. When dealing with statutes that are "vague and unspecific" or "written with many alternatives," we apply a modified *Blockburger* analysis. *State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). Under this analysis, "we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Branch*, 2018-NMCA-031, ¶ 25.

## B.     Attempted Murder and Aggravated Battery of Voorhies

**{7}** Defendant argues that principles of double jeopardy preclude the State from convicting him of both attempted murder and aggravated battery with a deadly weapon with respect to Voorhies. We agree.

## 1.     Unitary Conduct

**{8}** Defendant argues that the stabbing of Voorhies was the basis for both the attempted first degree murder charge and the aggravated battery with a deadly weapon charge, and that the two charges were therefore based on unitary conduct. Defendant is correct.

**{9}** To compare the "elements of the charged offenses," *Franco*, 2005-NMSC-013, ¶ 7 (internal quotation marks and citation omitted), we look to the jury instructions. The district court instructed the jury that to find Defendant of aggravated battery with a deadly weapon, it must find, among other things, that Defendant "touched or applied force to Arielle Voorhies by stabbing her with a deadly weapon[,]" and that Defendant did so "us[ing] a knife." The court instructed the jury that to find Defendant guilty of attempted first degree murder, it must find, among other things, that Defendant "began to do an act which constituted a substantial part" of the murder "but failed to commit" the murder. Because the attempted murder instruction uses open-ended language to describe the actus reus, we cannot determine from the jury instructions alone whether the stabbing or some other act was the basis for the attempted murder charge.

**{10}** To make this determination, we look to the State's closing arguments. *See, e.g.*, *Silvas*, 2015-NMSC-006, ¶¶ 10, 19 (considering the state's closing arguments in determining whether the defendant's conduct was unitary). Our review of the record confirms that during closing argument the State invited the jury to find Defendant guilty of both attempted murder and aggravated battery based on the same act: the stabbing of Voorhies. The State argued Defendant's use of "a very big knife" to stab Voorhies was a "substantial part of . . . murder." Accordingly, the jury could have convicted Defendant of both attempted murder and aggravated battery based on unitary conduct.

**{11}** The State contends that its closing argument referred to other acts, in addition to the stabbing, that could have constituted "a substantial part of . . . [m]urder" under the jury instruction. The prosecutor did argue that Defendant's planning and preparation, which included bringing the knife and other items to the scene of the crime, also satisfied the "substantial part of . . . murder" element. However, the mere *possibility* that the jury based its verdicts on the planning and preparation, rather than the stabbing, is not dispositive in our unitary conduct inquiry. Because we are unable to determine from the record whether the jury found that Defendant committed the attempted murder by preparing for the attack or by stabbing Voorhies, we must conclude that the verdicts were based on unitary conduct. *See State v. Montoya*, 2011-NMCA-074, ¶ 39, 150 N.M. 415, 259 P.3d 820 (concluding that convictions for kidnapping and criminal sexual penetration violated double jeopardy because it was unclear from the record whether the force the defendant used for the kidnapping was the same as the force he used for the criminal sexual penetration).

### 2. Legislative Intent

**{12}** The remaining question is whether the Legislature intended to impose multiple punishments for such conduct. Our Supreme Court has concluded that "attempted murder is a generic, multipurpose statute that is vague and unspecific." *Swick*, 2012-NMSC-018, ¶ 25 (internal quotation marks omitted). Accordingly, we apply a modified version of the *Blockburger* analysis. *Gutierrez*, 2011-NMSC-024, ¶ 59. This entails "look[ing] to the [s]tate's theory of the case to inform what 'began to do an act which constituted a substantial part of [m]urder' means *in this case*." *Swick*, 2012-NMSC-018, ¶ 25. As we have explained, the State asked the jury to find Defendant guilty of

attempted murder based on a finding that by stabbing Voorhies, he began to do an act which constituted a substantial part of murder, and the State relied on the same act of stabbing as a basis for convicting Defendant of aggravated battery.

**{13}** The dispositive question is therefore whether the Legislature intended to impose multiple punishments for attempted murder and aggravated battery based on the same conduct. The answer is no. Our Supreme Court has "conclude[d] that the Legislature did not intend multiple punishments for attempted murder and aggravated battery arising from the same conduct because the latter is subsumed by the former." *Id.* ¶ 19.

**{14}** Because Defendant's convictions for attempted murder and aggravated battery of Voorhies rest on unitary conduct for which the Legislature did not intend multiple punishments, convicting Defendant of both offenses would violate his right not to be twice placed in jeopardy for the same offense. The district court must therefore vacate his conviction for the offense that carries the lesser punishment: aggravated battery with a deadly weapon. *See id.* ¶ 31 (recognizing that vacating the conviction for the offense that carries the lesser punishment is the remedy for a double jeopardy violation under a double description theory).

## C.      Aggravated Battery and Child Abuse of Burkhardt

**{15}** Defendant argues that his aggravated battery with a deadly weapon and child abuse charges merge and that his conviction for child abuse against Burkhardt should therefore be vacated. We assume without deciding that Defendant's conduct was unitary because he "cannot carry the burden imposed by the second prong of the *Swafford* test." *Ramirez*, 2018-NMSC-003, ¶ 42; *see also State v. Bahney*, 2012-NMCA-039, ¶ 21, 274 P.3d 134 (stating that it is permissible to presume unitary conduct because "our case law separately makes it clear that analysis pursuant to either prong can be dispositive of a *Swafford*-governed double jeopardy challenge").

**{16}** Because the child abuse and aggravated battery statutes do not expressly provide for multiple punishments, we first ask "whether each provision requires proof of a fact that the other does not." *Branch*, 2018-NMCA-031, ¶ 24. Although the aggravated battery statute, Section 30-3-5(A), is not vague, unspecific, or written with many alternatives, the child abuse statute, Section 30-6-1(D), is. We therefore apply the modified *Blockburger* analysis. "[L]ook[ing] to the [S]tate's trial theory to identify the specific criminal cause of action for which . . . [D]efendant was convicted," *State v. Gonzales*, 2019-NMCA-036, ¶ 22, 444 P.3d 1064, the jury instruction required the State to prove that "[D]efendant held a knife to the throat of Kayla Burkhardt[,]" which "caused Kayla Burkhardt to be placed in a situation that endangered [her] life or health." *See Swick*, 2012-NMSC-018, ¶ 21 (allowing the appellate court to "examin[e] the charging documents and the jury instructions given in the case" to identify the state's theory).

**{17}** Having identified the State's trial theory, we next consider whether the elements of the aggravated battery were subsumed within the elements of child abuse pursuant to *Blockburger*. Defendant's conviction for aggravated battery required proof that

Defendant stabbed Burkhardt with a knife, which is not an element of the child abuse charge. The child abuse charge was instead based on the theory that "[D]efendant held a knife to the throat of Kayla Burkhardt." We therefore conclude that the elements of Defendant's conviction for aggravated battery are not subsumed within the elements of his conviction of child abuse and presume that the Legislature intended to authorize separate punishments. *See Swick*, 2012-NMSC-018, ¶ 13 ("If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute.").

**{18}**  However, our inquiry does not end here because the presumption "may be overcome by other indicia of legislative intent." *Swafford*, 1991-NMSC-043, ¶ 31. One of these indicia is whether the two statutes are "directed toward protecting different social norms and achieving different policies"; if they are, then we can view them as "amenable to multiple punishments." *Id.* ¶ 32. We conclude that the child abuse and aggravated battery statutes are not aimed at the same policy goals. Our Supreme Court has recognized that a "purpose of the child-abuse-by-endangerment statute is to assure the protection of children, a highly vulnerable population." *Ramirez*, 2018-NMSC-003, ¶ 54. The aggravated battery statute, on the other hand, "protects against the social evil that occurs when one person intentionally physically attacks and injures another." *State v. Carrasco*, 1997-NMSC-047, ¶ 33, 124 N.M. 64, 946 P.2d 1075 (internal quotation marks and citation omitted). Having considered the other indicia of legislative intent, we see no basis for holding that they overcome the presumption that the Legislature intended multiple punishments for these two crimes. We therefore hold that Defendant's convictions for aggravated battery with a deadly weapon and child abuse do not violate double jeopardy.

## II.    Defendant Has Not Demonstrated That the Evidence Is Insufficient to Support His Child Abuse Conviction

**{19}**  The test for measuring Defendant's sufficiency of the evidence claim "is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. In so evaluating the evidence, we will neither speculate nor "sanction a view that assumes the worst about human nature" because doing so would disregard "an essential message of the

presumption of innocence." *State v. Mariano R.*, 1997-NMCA-018, ¶ 7, 123 N.M. 121, 934 P.2d 315. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**{20}** Defendant argues that the State failed to prove that Defendant had a special relationship with Burkhardt, which Defendant argues is an essential element of child abuse whenever the accused is a minor child. Defendant also argues that the State failed to prove that Defendant knew Burkhardt was a minor at the time of the offense, which Defendant also claims is an essential element. Defendant raises questions regarding the interpretation of criminal statutes, which we review de novo. *See State v. Neatherlin*, 2007-NMCA-035, ¶ 8, 141 N.M. 328, 154 P.3d 703. We apply this standard to each of Defendant's arguments in turn.

**A.      Absence of Special Relationship and Defendant's Status as a Minor**

**{21}** Defendant contends that the Legislature could not have intended for the child abuse statute to apply when the accused and the victim are both minor children and the accused has no "special duty" to the victim. Although this theory may have persuasive force as a matter of public policy, we see no way to square Defendant's theory with the plain language of the statute and New Mexico precedent.

**{22}** We begin with the statutory language, which is "[t]he primary indicator of legislative intent." *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863. Section 30-6-1(D)(1) states, in pertinent part: "Abuse of a child consists of *a person* knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" (Emphasis added.) Our Criminal Code defines "person" to include "*any* human being." NMSA 1978, § 30-1-12(E) (1963) (emphasis added). Because the child abuse statute uses the word "person" rather than a narrower term such as "adult," we conclude that the Legislature did not intend to exclude minor children from prosecution for child abuse.

**{23}** Our Supreme Court has refused to place children beyond the reach of a substantially similar criminal statute. In *State v. Pitts*, 1986-NMSC-011, 103 N.M. 778, 714 P.2d 582, the Court interpreted the statute defining the offense of contributing to the delinquency of a minor (CDM), which also applies to "any person." NMSA 1978, § 30-6-3 (1990). The Court held that a minor is subject to prosecution for CDM, reasoning that "person" is defined broadly to include any human being, and that to exclude children from prosecution categorically, the Court would have to add language such as "adult" to the statutory language the Legislature chose. *Pitts*, 1986-NMSC-011, ¶¶ 6-7. Defendant has given us no reason to distinguish *Pitts*, a precedent that strongly suggests that minor children may be convicted of child abuse.

**{24}** For similar reasons, we are unpersuaded that the Legislature intended to impose any special relationship requirement when the accused is a child. The child abuse

statute includes no language stating or even suggesting that such a relationship is an element of the offense, and "we cannot add a requirement that is not provided for in the statute or read into it language that is not there[.]" *Sec. Escrow Corp. v. N.M. Taxation & Revenue Dep't*, 1988-NMCA-068, ¶ 7, 107 N.M. 540, 760 P.2d 1306.

**{25}**   Defendant argues that "[a] non-caretaker cannot be convicted of child abuse." But Defendant concedes that in *State v. Lujan*, 1985-NMCA-111, ¶ 16, 103 N.M. 667, 712 P.3d 13, this Court concluded that the state need not prove that the accused has a special relationship to the child to convict him or her of intentional child abuse by endangerment. Our Supreme Court has also reached this conclusion. In *State v. Reed*, 2005-NMSC-031, ¶ 50, 138 N.M. 365, 120 P.3d 447, the Court stated, "Our courts have held that the statute applies to *any person* who causes or permits a child to be placed in a situation that endangers the child's life." (Emphasis added.) The Court reasoned that reading Section 30-6-1(D) "to apply to all adults, regardless of the relationship, appears consistent with the legislative intent to protect children from abuse." *Reed*, 2005-NMSC-031, ¶ 50.

**{26}**   We also reject Defendant's argument that it would be absurd and unjust to hold him criminally liable for child abuse by endangerment because he and Burkhardt were peers at the time of the attack. Defendant argues that construing the child abuse statute broadly could lead to absurd and unjust results, including convicting a child of child abuse for fighting with another child or for driving recklessly when a friend is a passenger in the child's vehicle. Although convicting children of child abuse could conceivably be absurd or unjust in certain circumstances, such circumstances are not present in Defendant's case. Defendant—who, at seventeen years old, was more than a year older than Burkhardt—held a knife to her neck and threatened to kill her. Defendant has not persuaded us that his conviction for child abuse is absurd or unjust.

## B.   Knowledge That the Victim Was a Minor

**{27}**   Defendant argues that knowledge that the victim is a minor is an essential element of child abuse. Although "[t]he starting point in every case involving the construction of a statute is an examination of the [statutory] language," *State v. Johnson*, 2001-NMSC-001, ¶ 6, 130 N.M. 6, 15 P.3d 1233 (internal quotation marks and citation omitted), Defendant's briefing on this question does not include any discussion of the plain language of the child abuse statute. To answer the important question Defendant presents, we would have to develop an argument for him. We decline to do so. As our Supreme Court has recognized, "To rule on an inadequately briefed issue, [the appellate court] would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for [the appellate court] to promulgate case law based on [its] own speculation rather than the parties' carefully considered arguments." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (citation omitted). Unable to reach the merits of the question presented here, we must leave it unresolved. *See State v. Ramirez*, 2016-NMCA-072, ¶

6, 387 P.3d 266 (recognizing that it "is not entirely clear" whether the state is required to prove that the defendant was aware that the victim was a child).

### III. The District Court Did Not Abuse Its Discretion by Admitting Recordings of 911 Calls

**{28}** Defendant argues that Rule 11-403 NMRA prohibited admission of recordings of telephone conversations that Voorhies and Mancha had with 911 operators, and that the district court erred by admitting the recordings. We disagree.

**{29}** We apply an abuse of discretion standard to claims that admission of evidence violated Rule 11-403. *State v. Adamo*, 2018-NMCA-013, ¶ 37, 409 P.3d 1002. Rule 11-403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**{30}** Defendant invokes two of the pertinent Rule 11-403 considerations: "unfair prejudice" and "cumulative evidence." However, his briefing does not include any argument to support his assertion that the contents of the 911 recordings posed a danger of unfair prejudice, much less that any such danger substantially outweighed the probative value of the recordings. Because Defendant failed to develop this part of his argument, we decline to address it. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

**{31}** We reject the remainder of Defendant's argument because the record does not support his assertion that the contents of the 911 calls were cumulative of other trial evidence. Although both Voorhies and Mancha testified at trial that they had called 911, as Defendant points out, neither Voorhies nor Mancha testified about what was said during those calls. So, contrary to Defendant's assertion, the recordings of the 911 calls did add new information to the trial.

**{32}** Defendant has not persuaded us that the district court abused its discretion by admitting the recordings of the 911 calls into evidence.

### IV. Eighth Amendment: Cruel and Unusual Punishment

**{33}** Defendant claims that his sentence of forty years of imprisonment violates the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment.[2] We review this question of constitutional law de novo. *Ira v. Janecka*, 2018-NMSC-027, ¶ 11, 419 P.3d 161.

**{34}** The bulk of Defendant's argument is a summary of United States Supreme Court precedent regarding the Eighth Amendment and the sentencing of children. This

---

2Because Defendant does not argue that Section II, Article 13 of the New Mexico Constitution affords greater protection than its federal counterpart, we do not address the question.

precedent does not directly support the holding Defendant seeks. Instead, the cases Defendant cites involved juveniles who were sentenced to death or life without the possibility of parole. Defendant did not receive such a sentence.

{35}     Precedent from our Supreme Court requires us to reject Defendant's argument. In *Ira*, 2018-NMSC-027, our Supreme Court held that the Eighth Amendment did not invalidate a juvenile defendant's sentence, under which he would become eligible for parole after 46 years, when he reached the age of 62, if he earned credit for good behavior. *Id.* ¶¶ 11, 35. Our Supreme Court observed that "the fact that [the defendant] will serve almost 46 years before he is given an opportunity to obtain release is the outer limit of what is constitutionally acceptable." *Id.* ¶ 38. Defendant's sentence is within this outer limit of constitutionality. It is undisputed that if Defendant earns credit for good behavior, he will become eligible for parole in less than 46 years, before he turns 62. Indeed, Defendant acknowledges that he will be "in his early fifties" when he becomes eligible for parole. We conclude that Defendant's sentence does not violate the Eighth Amendment.

**CONCLUSION**

{36}     We reverse Defendant's conviction for aggravated battery with a deadly weapon against Voorhies and remand to the district court to vacate that conviction and resentence Defendant accordingly. We affirm in all other respects.

**{37}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**