2005 NMSC 013
STATE OF NEW MEXICO, Plaintiff-Petitioner,
v.
GINA FRANCO, Defendant-Respondent.
Docket No. 28,791.
Supreme Court of New Mexico.
Corrected: April 29, 2005.
Filing Date: June 8, 2005.
Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Petitioner.
John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

OPINION
MINZNER, Justice.
{1} Defendant appeals from convictions following a jury trial for possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(D) (1990), and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (1963, prior to 2003 amendment). Defendant initially appealed her convictions to the Court of Appeals on several grounds, including whether her conviction for possession of a controlled substance and tampering with evidence violated her right to be free from double jeopardy. State v. Franco, 2004-NMCA-099, ¶ 1, 136 N.M. 204, 96 P.3d 329. The Court of Appeals reversed on the double jeopardy issue and remanded to the district court with instructions to vacate Defendant's conviction and sentence for possession of a controlled substance. Id. ¶ 24. The State petitioned this Court for certiorari, and we now hold the two convictions did not violate the constitutional prohibition against double jeopardy. We therefore reverse the Court of Appeals on this issue, and we affirm Defendant's judgment and sentence.

I.
{2} The following facts were testified to at trial. Police obtained a warrant to search an apartment of a suspected drug dealer. The warrant was granted the day after Defendant's boyfriend, "Patrick," sold cocaine at the apartment to an undercover police officer. As officers arrived to execute the warrant, they observed several people in front of the apartment whom they secured before entry. Officer Moyers knocked at the partially opened front door, identified himself as a police officer and announced he had a search warrant. After waiting a few seconds, he entered the apartment, which was a small, one-room efficiency, consisting of a combined living room, bedroom, and kitchen, and a walled-off bathroom. As he entered, Moyers saw two men jump up from the couch, and he ordered them to the ground. As Officer Edmondson entered immediately behind Moyers, he saw Moyers securing one of two men. As he began securing the second, he saw Defendant run into the bathroom. Edmondson could see Defendant facing the bathroom window, but he did not see anything in her hand or see her throw anything out the window. Moyers, who did not notice Defendant when he entered, ran into the bathroom to secure the area. When he went into the bathroom, Defendant was standing between the toilet and window, facing the door. After securing her, he searched the bathroom, but he did not find any contraband or indication the toilet had been flushed to dispose of evidence. Officers initially located drug paraphernalia in the kitchen area, including pipes to smoke crack, brillo pads to filter the crack in the pipes, razor blades, baking soda to cook powder cocaine into crack for smoking, and a spoon with white residue. After conducting a more thorough search, police discovered a Tylenol bottle containing 7.32 grams of crack cocaine outside the apartment, directly under the bathroom window.
{3} Defendant admitted she was in the apartment for about thirty to forty-five minutes before police arrived. She also admitted handling a similar Tylenol bottle during that time, until "L.D.," the owner of the apartment, told her not to handle it and took possession of the bottle. She denied knowing what the bottle contained or throwing it out the window. Defendant claimed she entered the bathroom before police arrived and was fixing her hair when they arrived. According to Moyers, Defendant told him and Edmondson that she would admit the cocaine was hers if they did not arrest her. In addition, according to Edmondson, Defendant asked whether she would be arrested if she admitted the "dope" was hers. Defendant testified the officers told her she would not be arrested if she admitted it was hers, which she refused to do. Defendant was arrested and charged with possession of a controlled substance and tampering with evidence.
{4} The jury convicted Defendant on both charges. The Court of Appeals concluded the charge of possession should be viewed as a lesser-included offense of the charge of tampering with evidence, and therefore convictions for both offenses violated double jeopardy. For the following reasons, we disagree.

II.
{5} Whether Defendant's conviction for the violation of Sections 30-31-23(D) and 30-22-5 constitutes multiple punishment for the "same offense" as barred by the double jeopardy clause is a question of legislative intent, which we review de novo. See State v. Foster, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140. To determine whether these statutes are the "same offense" for double jeopardy purposes, we apply a two-part test: (1) "whether the conduct underlying the offenses is unitary;" and, if so, (2) "whether the legislature intended to create separately punishable offenses." Swafford v. State, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991).
{6} In applying the first part of this test, the Court of Appeals concluded Defendant's conduct was unitary. The State argued Defendant's conduct was not unitary because the jury could have concluded that Defendant possessed the cocaine before the police arrived and subsequently tampered with the evidence by throwing it out the window. Id. However, the court limited its assessment to the State's legal theory at trial, which was that Defendant was in possession when she ran to the bathroom and threw the bottle. Id.
{7} We do not agree with the Court of Appeals' analysis to the extent it suggests the State's legal theory necessarily determines whether conduct may be considered unitary. "The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." Swafford, 112 N.M. at 13, 810 P.2d at 1233. The proper analytical framework is whether "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." Id. at 14, 810 P.2d at 1234. If, after examining the elements and the facts, "it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry." Id. On the other hand, separate punishments may be imposed if the offenses are "separated by sufficient indicia of distinctness." Id. at 13, 810 P.2d at 1233. To determine whether a defendant's conduct was unitary, we consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act. See State v. Dominguez, 2005-NMSC-001, ¶ 23, 137 N.M. 1, 106 P.3d 563.
{8} The jury was instructed that it could find Defendant committed possession of cocaine if it was on her person or in her presence, she exercised control over it, and she knew or believed it was cocaine or some other unlawful or regulated drug or substance. UJI 14-3102, 14-3130 NMRA 2005. The jury was instructed it could find Defendant tampered with evidence if she threw cocaine out the window and she intended to prevent the apprehension, prosecution or conviction of herself or others. UJI 14-2241 NMRA 2005. While the prosecutor's legal theory might have tied the State in proving tampering with evidence, see State v. Smith, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986), that theory did not limit the evidence the jury could consider to find Defendant guilty of possession.
{9} Based on the elements stated in the instructions and the evidence produced at trial, the jury had an independent factual basis for finding each act. The jury could reasonably find Defendant possessed cocaine and exercised control over it before the police arrived. The jury could reasonably find the act of possession was distinct from the act of tampering.
{10} Defendant testified she was inside the apartment for thirty to forty-five minutes before the police arrived; it was a one-room efficiency apartment. Defendant was in close proximity to drug paraphernalia commonly used to smoke and/or cook crack cocaine, as well as to possible cocaine users and/or dealers. She admitted handling the Tylenol bottle before police arrived, and she was warned not to handle the bottle. In addition, there was evidence to support a reasonable inference that the crack belonged to Defendant or her boyfriend. The jury could reasonably infer Defendant tried to destroy the evidence because she knew or believed there was an illegal substance inside the bottle before police arrived. Because Defendant threw the cocaine out the window after police arrived, rather than leaving the evidence for police to discover, the jury could have found two distinct acts, committed at different times, in different locations, with a different mental state and purpose, and separated by the intervening arrival of the police.
{11} Nevertheless, the jury might have based its verdict on the theory that Defendant possessed the cocaine when she tampered with evidence. In that event, the conduct was unitary. Because the jury could have based its verdict on the theory Defendant possessed the cocaine at the time she threw it out the window, we presume unitary conduct. See Foster, 1999-NMSC-007, ¶¶ 27-28 (applying presumption the legal theory that potentially violates double jeopardy is relevant in determining whether conduct is unitary when the State charged kidnapping under alternative theories and it was unclear from the verdict on which theory the defendant was convicted); State v. Crain, 1997-NMCA-101, ¶ 22, 124 N.M. 84, 946 P.2d 1095 (presuming conviction was based on a theory that violated double jeopardy when kidnapping was charged under alternative theories, but State tried case on only one theory and the verdict did not indicate which alternative was used to convict defendant). Because we presume the conduct was unitary, we proceed to the second part of the Swafford analysis to determine whether the Legislature intended to allow multiple punishments based on the facts and circumstances of this case.
{12} The same act may result in violations of more than one statute. Swafford, 112 N.M. at 8, 810 P.2d at 1228. The test for determining conduct is unitary helps us decide whether more than one act has occurred. Id. at 13, 810 P.2d at 1233. The test for determining whether more than one act has occurred was never intended to be the sole test for determining whether the Legislature intended to punish conduct under more than one statute. See State v. Mora, 2003-NMCA-072, ¶ 20, 133 N.M. 746, 69 P.3d 256 (noting that while criminal sexual contact of a minor and attempted criminal sexual penetration of a minor may both arise from the same conduct on specific facts, we do not look at the specific facts of the offense under Swafford; rather, we look at the statutory elements). "[T]he sole limitation on multiple punishments is legislative intent," Swafford, 112 N.M. at 13, 810 P.2d at 1233, and, unless the Legislature clearly authorized multiple punishments, we apply the test articulated in Blockburger v. United States, 284 U.S. 299, 304 (1932), to determine that intent. Under the Blockburger test, we compare the elements of the relevant statutes to determine whether the Legislature intended to authorize separate punishments under each statute. Id. at 304. Under that additional test, "the evidence and proof offered at trial are immaterial." Swafford, 112 N.M. at 8, 810 P.2d at 1228. "If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes . . . ." Id. at 14, 810 P.2d at 1234. However, if each offense requires proof of an element that the other does not, a presumption that separate punishments were intended arises. Id. The presumption may be rebutted by other indicia of legislative intent, such as the language, structure, history, and purpose of the statutes. Id. Other factors that are probative of legislative intent to punish are whether the statutes are violated together and the quantum of punishment. Id. at 14-15, 810 P.2d at 1234-35.
{13} The Court of Appeals held the Legislature did not intend separate punishments and therefore the convictions violated double jeopardy. See Franco, 2004-NMCA-099, ¶ 22. Although the court articulated the proper test for determining legislative intent under Swafford, it applied a much different test. To determine under Blockburger whether one offense subsumed another, the court considered only the theory that Defendant tampered with evidence by throwing cocaine out the window with the requisite intent. Id. The court then held the possession conviction was subsumed within the tampering conviction, "`because Defendant possessed the cocaine when she was in the act of throwing it out the window.'" Id. In other words, the Court of Appeals construed Swafford to support treating the offense of possession as subsumed within the offense of tampering because under the State's legal theory the act of possessing cocaine was necessarily included in the act of throwing cocaine. See id. We conclude this was the wrong analysis.
{14} As Swafford suggested, we treat statutes written in the alternative as separate statutes for purposes of the Blockburger analysis. See State v. Rodriguez, 113 N.M. 767, 771, 833 P.2d 244, 248 (Ct. App. 1992). This means that instead of looking at the statute in the abstract, we look at the "legal theory" of the offense that is charged. Id. Nevertheless, we then compare "`the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail.'" Id. (quoting Pandelli v. United States, 635 F.2d 533, 538 (6th Cir. 1980)). The reason for this approach is that a statute that serves several purposes and has been written in the alternative may "have many meanings and a wide range of deterrent possibilities." Pandelli, 635 F.2d at 538-39 (quoted in Rodriguez, 113 N.M. at 771, 833 P.2d at 248). Unless we focus on the relevant alternatives, we run the risk of misconstruing legislative intent.
{15} We are more likely to depart from a strict application of Blockburger when a defendant is charged with multiple alternatives of a compound statute and it is unclear which alternative the jury relied on. Compare Mora, 2003-NMCA-072, ¶¶ 21-22, 27 (analyzing the elements of criminal sexual contact of a minor and attempted criminal sexual penetration of a minor and, because each statute could be violated without violating the other, concluding neither was subsumed within the other although other indicia of legislative intent precluded multiple punishment) with Rodriguez, 113 N.M. at 771-72, 833 P.2d at 248-49 (concluding the crime of dangerous use of explosives was subsumed in the crime of arson under the alternatives charged for each offense). We also have considered the State's legal theory in determining the appropriate unit of prosecution when a defendant was charged with multiple violations of a single statute. See generally State v. LeFebre, 2001-NMCA-009, ¶ 23, 130 N.M. 130, 19 P.3d 825 (holding the Legislature did not intend multiple punishments for resisting, evading or obstructing an officer in different ways in a single high-speed chase).
{16} In this case, when we compare the elements of the two statutes, it is clear that each statute requires proof of an element the other does not. Possession of a controlled substance requires proof Defendant knew or believed it was cocaine or some other substance that is regulated, which is not required to prove tampering. Tampering with evidence requires proof Defendant intended to prevent the apprehension, prosecution or conviction of herself or others, which is not required to prove possession. Although tampering can be committed in different ways, see § 30-22-5(A), the element of intent distinguishes the offense of tampering from the offense of possession, however the offense of tampering is committed. Similarly, the element of knowledge distinguishes the offense of possession from the offense of tampering, however the offense of tampering is committed. Application of the Blockburger test therefore results in a presumption that the Legislature intended a separate punishment for each crime.
{17} The Court of Appeals concluded the possession statute was subsumed within the tampering statute by analogy to the holding in State v. Medina, 87 N.M. 394, 534 P.2d 486 (Ct. App. 1975). Franco, 2004-NMCA-099, ¶ 22. In Medina, the court held "possession of marijuana was a lesser offense necessarily included in the greater offense of distribution of marijuana." Id. at 396, 534 P.2d at 488. The court reasoned that the prohibited conduct of distribution was equivalent to the act of delivery and that the act of delivery was equivalent to the act of transferring or "making over the possession or control." Id. at 395, 534 P.2d at 487. Thus the court concluded one cannot distribute marijuana without also possessing marijuana. Id. However, Medina was decided under the "necessarily included" test, an evidence-based approach that Swafford later rejected in favor of the Blockburger tests, which is an elements-based approach. The "necessarily included test" is a subset of the "same evidence" and "necessarily involved" tests, because it focuses on the facts that will sustain a conviction, as well as defendant's conduct. See Swafford, 112 N.M. at 10-12, 810 P.2d at 1230-32 (describing the tests our courts had used in the past to develop multiple punishment theory). While Rodriguez and its progeny teach us to look at the State's legal theory in charging compound crimes, and perhaps in evaluating whether multiple violations of a single statute have occurred, we have never departed from the Blockburger test, which focuses on elements, by examining the conduct or evidence in detail. In fact, we have indicated that examination was neither required nor appropriate. See LeFebre, 2001-NMCA-009, ¶ 22; Rodriguez, 113 N.M. at 771, 833 P.2d at 248. The Court of Appeals' opinion is a departure from the Blockburger test that is inconsistent with Swafford. We must look for legislative intent in another way, and we must recognize the presumption that results from the Blockburger test, whether applied in its strict or modified form.
{18} The presumption that results under Blockburger from comparing the elements of tampering with evidence and the elements of possession is supported by other indicia of legislative intent to punish Defendant's conduct under both statutes. The possession and tampering statutes are directed at different social purposes. Possession of cocaine is regulated by a comprehensive scheme of penalties designed to protect the public from the dangers of drug abuse. See State v. Reams, 98 N.M. 372, 377, 648 P.2d 1185, 1190 (Ct. App. 1981) (Wood, J., dissenting) (adopted as the opinion of this Court in State v. Reams, 98 N.M. 215, 216, 647 P.2d 417, 418 (1982)). The tampering with evidence statute is aimed at the preservation of evidence for trial. In addition, the crimes are not necessarily violated together, which supports an inference the Legislature intended multiple punishment. See State v. Sosa, 1997-NMSC-032, ¶ 36, 123 N.M. 564, 943 P.2d 1017 ("The fact that each statute may be violated independent of the other will also lend support to the imposition of sentences for each offense."). Possession of a controlled substance certainly can be committed without tampering with evidence. Conversely, tampering with evidence, even if the evidence is illegal drugs, probably can be committed without legally possessing the drugs; one might exercise control over a controlled substance with intent to hamper law enforcement without knowing the nature of the evidence. Finally, the quantum of punishment is the same for both statutes, which suggests the Legislature did not intend one offense to subsume the other, but intended separate punishment for each. Cf. Swafford, 112 N.M. at 15, 810 P.2d at 1235 ("Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes.").

III.
{19} We conclude the Legislature intended separate punishments for possession of a controlled substance and for tampering with evidence. We conclude convictions for possession of cocaine and tampering with evidence did not violate Defendant's double jeopardy rights. Even if based on unitary conduct, the convictions are valid because there are sufficient indicia of legislative intent for separate punishment. The Court of Appeals properly exercised caution in analyzing the facts of this case. Had the jury convicted Defendant on a basis that the constitutional protection against double jeopardy precluded, reversal would have been appropriate. We conclude this is not such a case. Defendant's convictions are affirmed.
{20} IT IS SO ORDERED.
___________________________________
PAMELA B. MINZNER, Justice
WE CONCUR:
___________________________________
RICHARD C. BOSSON, Chief Justice
___________________________________
PATRICIO M. SERNA, Justice
___________________________________
PETRA JIMENEZ MAES, Justice
___________________________________
EDWARD L. CHÁVEZ, Justice