This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35681**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SEVEDEO LUJAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant appeals his convictions for criminal sexual contact of a minor (CSCM), in violation of NMSA 1978, Section 30-9-13(B)(1) (2003), and criminal sexual penetration of a minor (CSPM), in violation of NMSA 1978, Section 30-9-11(D)(1) (2009). Defendant raises the following issues on appeal: (1) his convictions for both CSCM and CSPM violate double jeopardy, (2) the district court erred in admitting a videotaped interrogation, and (3) there was insufficient evidence to support his convictions. We agree with Defendant's double jeopardy argument and, accordingly,

remand to the district court to vacate Defendant's conviction for CSCM. We otherwise affirm.

## DISCUSSION

### I. Double Jeopardy

**{2}** Defendant contends that his convictions for CSCM and CSPM violate the double jeopardy guarantee against multiple punishments for the same conduct. Multiple punishment problems arise in both unit of prosecution claims, "in which an individual is convicted of multiple violations of the same criminal statute[,]" and double description claims, "in which a single act results in multiple charges under different criminal statutes[.]" *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. In this case, Defendant raises a "double description" challenge. In analyzing such challenges, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223: (1) whether the conduct is unitary and (2) if so, whether the Legislature intended to punish the offenses separately. *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* (internal quotation marks and citation omitted). "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

### A. Unitary Conduct

**{3}** The resolution of the unitary conduct question "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). "The proper analytical framework is whether the facts . . . establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted). "[S]eparate punishments may be imposed if the offenses are separated by sufficient indicia of distinctness." *Id.* (internal quotation marks and citation omitted). In making this determination, "we consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act."[1] *Id.*; *see also Swafford*, 1991-NMSC-043, ¶

---

[1] These factors are substantially similar to those set out in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624—the principal case examining whether distinct acts support multiple counts in unit of prosecution cases. *See id*. (examining multiple counts of criminal sexual penetration). Our courts have relied on *Herron* in determining whether the conduct at issue is unitary, particularly in sex-crime cases such as this one, and we thus find such cases persuasive. *See State v. Pisio*, 1994-NMCA-152, ¶ 33, 119 N.M. 252, 889 P.2d 860 ("We believe that *Herron* . . . provide[s] the proper basis for whether conduct in sex-crime cases is unitary[.]"); *see also Bernal*, 2006-NMSC-050, ¶ 16 ("[W]e are doing a substantially similar analysis when we conduct a unitary conduct inquiry in double description cases as when we conduct a unit-of-prosecution inquiry."); *Swafford*, 1991-NMSC-043, ¶ 28 (relying on *Herron* in adopting unitary conduct factors).

28 (considering time and space, quality and nature, and objects and results in determining unitary conduct).

**{4}** The parties dispute whether the conduct at issue is unitary. Defendant's conviction for CSCM was based on his touching or applying force to the outside of J.S.'s vagina with his fingers, and Defendant's conviction for CSPM was based on his penetrating J.S.'s vagina with his fingers. Examining the relevant factors, Defendant's acts lack sufficient indicia of distinctness. The contact and penetration were close in time and space—Defendant's conduct occurred within a span of about five minutes, while Defendant and J.S. sat in a single location, on the couch in the living room. The contact and penetration occurred in the same general manner—Defendant accomplished the contact and penetration by putting his hand inside J.S.'s underwear, rubbing her vagina with two fingers, and penetrating her vagina with one or more fingers, all while Defendant and J.S. stayed in the same position. Further, Defendant's objective during the episode did not seem to waver—he persisted in touching J.S.'s genital area with his hand and got mad when J.S. closed her legs. Where, as here, a defendant's acts lack distinctness in time, space, manner, and object, we have concluded such conduct is unitary. *See State v. Mora*, 2003-NMCA-072, ¶ 18, 133 N.M. 746, 69 P.3d 256 (concluding there was unitary conduct when the defendant's acts of laying on top of the child and then "humping" her took place in a short timeframe and in the same space); *see also State v. Ervin*, 2008-NMCA-016, ¶ 46, 143 N.M. 493, 177 P.3d 1067 (concluding, in unit of prosecution case, that only one act of CSCM occurred when there was one victim and no lapse of time, and the defendant apparently had only one motive, notwithstanding the fact that the defendant touched the victim's breasts, buttocks, and vagina).

**{5}** The State, however, argues that the act of J.S. closing her legs between the contact and penetration was an intervening event, sufficient to separate the conduct. During the episode, Defendant opened J.S.'s legs and then put his hand in her underwear and touched her vagina; in response, J.S. closed her legs several times and Defendant forced them open again. J.S. testified that Defendant put his fingers inside her vagina after about the third time she closed her legs and he reopened them. Notwithstanding the State's contention, this Court in the past has determined that conduct similar to J.S.'s was not an intervening event sufficient to support separate charges. *See State v. Laguna*, 1999-NMCA-152, ¶ 38, 128 N.M. 345, 992 P.2d 896 (concluding, in unit of prosecution case, that a child pushing the defendant's hand away as the defendant tried repeatedly to reach the child's groin "over a very short time period" was not an intervening event sufficient to support two charges of attempted CSCM and instead constituted "one continuous attempt to reach [the child's] private parts"); *see also State v. Segura*, 2002-NMCA-044, ¶¶ 4, 9, 132 N.M. 114, 45 P.3d 54 (concluding, in unit of prosecution case, that a child pulling her hand away as the defendant tried several times to move it toward his groin over a short period of time was not an intervening event sufficient to support two charges of CSCM). We reach the same conclusion here—J.S.'s act of closing her legs was not an intervening event sufficient to separate Defendant's conduct.

**{6}** The State additionally argues that Defendant's conduct was not unitary because Defendant completed the crime of CSCM when he touched J.S.'s vagina and, in response, she closed her legs. The completion of CSCM, the State contends, broke the unitary nature of Defendant's conduct into discrete crimes punishable under multiple statutes. The State, however, has not directed us to any cases applying the completed offense doctrine to delineate between sex crimes, nor has our research revealed any such published cases. Of the cases cited by the State, only one—*Bernal*—relies in any significant part on the completed offense doctrine in determining nonunitary conduct. But *Bernal* is inapposite. The defendant in *Bernal* broke in, shot a man, and then turned to his girlfriend to march her at gunpoint through the home in search of money. 2006-NMSC-050, ¶ 11. Though our Supreme Court concluded that the completion of the murder was the most significant factor in its analysis, the defendant's conduct plainly was nonunitary under *Swafford*—involving two victims and various locations throughout the home. *Id.* There clearly was a discernible point in *Bernal* at which the murder was completed and the attempted robbery had yet to be committed. *Id.* Conversely, here, while the State relies on J.S. closing her legs as the discernible point at which CSCM was completed, we already have determined this is an insufficient intervening event. Given the dissimilarity of *Bernal* to this case, as well as the lack of a meaningful point of completion here, we do not find *Bernal* persuasive. *Cf. Herron*, 1991-NMSC-012, ¶ 12 (cautioning, in unit of prosecution cases involving criminal sexual penetration, against reliance on "the notion of completeness").

**{7}** More factually analogous cases persuade us that Defendant's conduct in this case was unitary. In *Mora*, this Court analyzed similar conduct for indicia of distinctness in the context of CSCM and attempted CSPM. 2003-NMCA-072, ¶ 18. A twelve-year-old girl was asleep in her home when an intruder broke in. *Id.* ¶ 3. The man found the victim, straddled her, and pulled down her pants. *Id.* She woke to find him on top of her with his pants down. *Id.* He maintained this position without moving until he began "humping" the victim, which he did for a "couple of minutes." *Id.* The man fled when the victim's brother began yelling. *Id.* Although there arguably was a point at which the defendant had completed CSCM—as he lay naked on top of the victim prior to beginning to hump her—our analysis did not parse the defendant's conduct in this manner. We, instead, concluded that the defendant's acts could "only be reasonably deemed to constitute unitary conduct" because his acts "all took place within the same short space of time, with no physical separation between the illegal acts." *Id.* ¶ 18; *see Ervin*, 2008-NMCA-016, ¶ 46 (concluding, in unit of prosecution case, that there was "one continuous course of conduct, not capable of being split into three charges merely because [the d]efendant touched three different body parts"). We reach the same conclusion in this case.

**{8}** Based on our review of the record, Defendant's acts were close in time and space, committed in the same manner and with the same objective, and there was no intervening event. We therefore conclude Defendant's conduct was unitary. *See Swafford*, 1991-NMSC-043, ¶ 28 ("If it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry.").

**B. Legislative Intent**

**{9}** Having found Defendant's conduct to be unitary, we turn to the second *Swafford* prong "to determine whether the [L]egislature intended to create separately punishable offenses."[2] 1991-NMSC-043, ¶ 25. Where, as here, the Legislature did not expressly specify in the applicable statutes whether it intended to make the offenses separately punishable, we first employ the rule of statutory construction expressed in *Blockburger v. United States*, 284 U.S. 299 (1932), and its progeny. *See State v. Gonzales*, 2019-NMCA-036, ¶ 22, 444 P.3d 1064, *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37707, Jul. 1, 2019). "If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute." *Swick*, 2012-NMSC-018, ¶ 13. This presumption, however, may be overcome by other indicia of legislative intent, which "may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *Id.* (internal quotation marks and citation omitted). "If after examining the relevant indicia the legislative intent remains ambiguous, the rule of lenity requires us to presume that the Legislature did not intend multiple punishments for the same conduct." *Id.*

**{10}** We find it unnecessary to engage in a *Blockburger* analysis, as this Court previously has determined in *Mora* that unitary conduct cannot support separate convictions under the CSCM and CSPM statutes even where a *Blockburger* presumption exists.[3] *See* 2003-NMCA-072, ¶¶ 22-27. In determining legislative intent in *Mora*, we first examined the harms addressed by each statute, concluding "that the purpose of the statutes prohibiting both CSCM and CSPM is the same." *Id.* ¶ 24. In particular, they both are "aimed at protecting the bodily integrity and personal safety of children." *State v. Pierce*, 1990-NMSC-049, ¶ 15, 110 N.M. 76, 792 P.2d 408; *Mora*, 2003-NMCA-072, ¶ 24 (same); *see also State v. Haskins*, 2008-NMCA-086, ¶ 24, 144 N.M. 287, 186 P.3d 916 (noting that the legislative intent of the CSCM statute is "to protect the victim from intrusions to each enumerated [intimate] part" in Section 30-9-13(A)—i.e., the genital area, groin, buttocks, anus or breast (internal quotation marks and citation omitted)). Second, in *Mora*, we evaluated the quantum of punishment between CSCM and CSPM. 2003-NMCA-072, ¶ 24. In this case, Defendant's CSCM conviction was under Section 30-9-13(B)(1), making it a second-degree felony, and Defendant's CSPM conviction was under Section 30-9-11(D)(1), making it a first-degree felony. As in *Mora*, we conclude "the fact that the punishment for . . . CSPM is greater than the punishment for CSCM" indicates "the [L]egislature did not intend punishment under both statutes." 2003-NMCA-072, ¶ 24 (internal quotation marks and citation omitted). Finally, although not discussed in *Mora*, we note that CSCM and CSPM are commonly violated together, particularly when, as here, the offenses involve the same

2The State did not present any argument in its briefing regarding the legislative intent prong of *Swafford*, and so we conduct this analysis without input from the State.

3Although *Mora* involved an attempted CSPM, our legislative intent analysis was based on the CSCM and CSPM statutes and did not depend on the fact that the penetration was not completed. *See* 2003-NMCA-072, ¶¶ 23-27. We thus conclude *Mora* controls here.

intimate part. *Cf. State v. Romero*, 2013-NMCA-101, ¶ 10, 311 P.3d 1205 (noting that "[a]s a matter of physiology, the intentional touching or the application of force to the intimate parts of a minor is inherent in the criminal sexual penetration of a minor" and concluding that CSCM is a lesser offense of CSPM such that the defendant was on notice of the CSCM charge).

**{11}** Based on our analysis of the second *Swafford* prong, we find no reason to deviate from our prior conclusion in *Mora* regarding legislative intent. Again "[w]e do not believe the [L]egislature has manifested any clear intent that a defendant could be convicted for . . . CSPM and CSCM for unitary conduct. To the contrary, the canons of construction, found in *Swafford*, demonstrate a legislative intent to disallow multiple punishment in this context." *Mora*, 2003-NMCA-072, ¶ 27. We, therefore, conclude that Defendant's convictions for both CSCM and CSPM violate double jeopardy, and consequently Defendant's conviction for CSCM must be vacated. *See State v. Gonzales*, 2007-NMSC-059, ¶ 10, 143 N.M. 25, 172 P.3d 162 ("If double jeopardy is violated, we must vacate the conviction for the lesser offense.").

## II.     Admission of Interrogation Evidence

**{12}** Defendant next contends that the district court erred by admitting his videotaped interrogation because the evidence was not relevant and, even if relevant, was more prejudicial than probative. *See generally* Rule 11-401 NMRA; Rule 11-402 NMRA; Rule 11-403 NMRA. We review a district court's decision to admit evidence for abuse of discretion. *State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). Here, Defendant, during the interrogation, corroborated some of J.S.'s testimony and admitted to engaging in the acts constituting both CSCM and CSPM. Given this, the interrogation was relevant. *See* Rule 11-401 (defining relevant evidence); *Flores*, 2010-NMSC-002, ¶ 27 ("[A]ny doubt whether the evidence is relevant should be resolved in favor of admissibility." (internal quotation marks and citation omitted)). Defendant nonetheless argues that the interrogation contained prejudicial statements, such as his opinions about whether sex offenders can be rehabilitated and whether younger women can be attracted to older men. To the extent these statements prejudiced Defendant, the district court acted well within its discretion in determining that the probative value of the interrogation was not substantially outweighed by its prejudicial effect. *See* Rule 11-403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice[.]"); *State v. Chamberlain*, 1991-NMSC-094, ¶ 9, 112 N.M. 723, 819 P.2d 673 ("The [district] court is vested with great discretion in applying Rule [11-]403, and it will not be reversed absent an abuse of that discretion."). We conclude the district court did not abuse its discretion in admitting the interrogation video.

## III.     Sufficiency of the Evidence

**{13}** Defendant finally argues that J.S.'s testimony was insufficient to support his convictions for CSCM and CSPM because it was uncorroborated. This contention is baseless. As an initial matter, J.S.'s testimony was corroborated by Defendant's interrogation. Regardless, it is well settled that, in criminal sexual penetration cases, "the testimony of the victim need not be corroborated and lack of corroboration has no bearing on weight to be given to the testimony." *State v. Tapia*, 2015-NMCA-048, ¶ 12, 347 P.3d 738 (internal quotation marks and citation omitted). Sufficient evidence supported the jury's verdict.

**CONCLUSION**

**{14}** Having concluded Defendant's right to be free from double jeopardy was violated, we remand to the district court to vacate the lesser offense of CSCM and to resentence Defendant accordingly. Otherwise, we affirm.

**{15}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**