This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40205**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**SAMUEL NEAL,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Defendant Samuel Neal was convicted of first-degree kidnapping, *see* NMSA 1978, § 30-4-1 (2003), second-degree criminal sexual penetration (CSP II), *see* NMSA 1978, § 30-9-11(E)(3) (2009), and third-degree aggravated battery inflicting great bodily harm, *see* NMSA 1978, § 30-3-5(A), (C) (1969). Defendant appeals and raises issues regarding (1) double jeopardy, (2) instructional error, (3) prosecutorial misconduct, and (4) the sufficiency of the evidence. We conclude that Defendant's convictions violate

double jeopardy and remand to the district court to vacate the convictions for CSP II and aggravated battery with great bodily harm, and resentence Defendant. Otherwise, we affirm.

## DISCUSSION

{2}     Victim, who was stopping for the night in New Mexico and taking a walk, encountered Defendant, who asked her to "hang out." Victim followed Defendant to an abandoned motel, but when Victim hesitated to join Defendant inside the motel, he pulled her through a window into a room. When Victim rebuffed Defendant's sexual advances, he beat, strangled, and sexually assaulted her. Because this is a memorandum opinion prepared for the benefit of the parties, we provide only those additional facts that are necessary to resolve the issues raised on appeal. Further, because we conclude that the CSP II and aggravated battery convictions must be vacated on other grounds, we do not address the instructional error issue that relates only to the CSP II jury instruction. We begin with the double jeopardy arguments before addressing Defendant's remaining arguments—the sufficiency of the evidence and prosecutorial misconduct.

## I.     Defendant's Convictions for CSP II and Aggravated Battery Violate Double Jeopardy Protections Under These Circumstances

{3}     Before examining Defendant's specific arguments, we briefly review the law applicable to the double-description double jeopardy claims raised on appeal, followed by the evidence at trial and the jury instructions. *See State v. Lorenzo*, 2024-NMSC-003, ¶ 5, ___ P.3d ___ (citing U.S. Const. amend. V; N.M. Const. art. II, § 15 and describing double-description violations as those where "a single course of conduct results in multiple charges under separate criminal statutes"). We examine first "whether the conduct underlying the . . . offenses is unitary," and if it is, we then consider "whether the Legislature intended for the unitary conduct to be punished as separate offenses." *Id.* (internal quotation marks and citation omitted); *see also Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223.

{4}     To evaluate unitary conduct, we consider the statutory elements, as specifically set forth in the jury instructions, together with "indicia of distinctness," *see, e.g.*, *State v. Franco*, 2005-NMSC-013, ¶¶ 7-8, 137 N.M. 447, 112 P.3d 1104, in order "to identify the relevant conduct and consider whether the acts can be distinguished from each other." *State v. Vasquez*, 2024-NMCA-020, ¶ 24, 542 P.3d 806. Conduct underlying the charged offenses is unitary if it is not sufficiently "separate and distinct" so that "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Swafford*, 1991-NMSC-043, ¶¶ 28-29.

{5}     As is apparent from the jury instructions outlined below, the jury in the present case was provided with multiple factual and legal alternatives to find Defendant guilty of each crime. In this context, our Supreme Court applies a rebuttable presumption, colloquially called the *Foster* presumption. *See State v. Foster*, 1999-NMSC-007, ¶ 28,

126 N.M. 646, 974 P.2d 140, *abrogated on other grounds as recognized in Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. The *Foster* presumption applies when a jury instruction permits the jury to convict a defendant based on an alternative that would result in a double jeopardy violation, and "the record does not disclose whether the jury relied on this legally inadequate alternative." *Foster*, 1999-NMSC-007, ¶ 28; *see State v. Sena*, 2020-NMSC-011, ¶ 54, 470 P.3d 227 (explaining the rebuttable presumption).

**{6}** If we determine that Defendant's conduct was unitary, we next consider "whether the Legislature intended for the unitary conduct to be punished as separate offenses." *Lorenzo*, 2024-NMSC-003, ¶ 5. Where, as here, the applicable statutes do not explicitly authorize multiple punishments and can be violated in alternative ways, we employ a modified version of the test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See State v. Gutierrez*, 2011-NMSC-024, ¶ 48, 150 N.M. 232, 258 P.3d 1024 (adopting a modified version of the *Blockburger* test for statutes that are vague and unspecific or may be proved in the alternative). To analyze the Legislature's intent, we consider "whether the statute, *as applied by the* [*s*]*tate in a given case*, overlaps with other criminal statutes so that the accused is being punished twice for the same offense." *State v. Begaye*, 2023-NMSC-015, ¶ 22, 533 P.3d 1057 (internal quotation marks and citation omitted). Accordingly, we compare the elements of the offenses, "looking at the [s]tate's legal theory of how the statutes were violated." *Id.* ¶ 24 (internal quotation marks and citation omitted).

**{7}** With this as legal context, we turn to the evidence at trial and the jury instructions. In this case, Victim provided a description of what transpired during her ten-to-twenty-minute encounter with Defendant. Victim stated that once they were both in the motel room, Defendant started to kiss her, and she said, "No." Defendant reached for Victim's shorts, and she said, "No." Defendant asked Victim if she wanted to have sex with him, and she said, "No. That's not why I'm here." After that, Defendant began to punch and choke Victim. Victim testified that when Defendant was choking her, she "thought [she] was going to die" and stopped struggling with him because she "realized he was going to rape" her and she "did not want to die" and was willing to do "anything [she] could to survive." Victim therefore stopped struggling, and Defendant moved her to the mattress, started kissing her again, and said, "I'm sorry I had to do that, but I really like you and it's my birthday." After that, Defendant removed both of their clothes, and performed oral sex and sexually penetrated Victim.

**{8}** In relevant part, the jury was instructed on first-degree kidnapping as follows:

> For you to find [D]efendant guilty of first[-]degree kidnapping, as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant took, restrained or confined [Victim] by force by pulling her into the motel room or pulling her away from the window and choking her or holding her down on the mattress;

2. [D]efendant intended to inflict physical injury or a sexual offense on [Victim];

3. The restraint or confinement of [Victim] was not slight, inconsequential, or merely incidental to the commission of another crime;

4. [D]efendant inflicted physical injury upon [Victim] or [D]efendant inflicted a sexual offense upon [Victim] during the course of the kidnapping.

The CSP II instruction, in relevant part, stated:

For you to find [D]efendant guilty of [CSP II] causing personal injury as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant caused [Victim] to engage in sexual intercourse;

2. [D]efendant caused the insertion of a penis into the vagina of [Victim] through the use of physical force or physical violence;

3. [D]efendant's acts resulted in bruising in the leg area, of the eye, and of the throat of [Victim].

Aggravated battery with great bodily harm was the third relevant crime for the jury's consideration and was instructed as follows:

For you to find [D]efendant guilty of aggravated battery with great bodily harm as charged in Count 3, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant touched or applied force to [Victim] by striking her with his fists and strangling her;

2. [D]efendant intended to injure [Victim];

3. [D]efendant acted in a way that would likely result in death or great bodily harm to [Victim].

Defendant argues that the conviction for first-degree kidnapping subsumes both the convictions for CSP II and aggravated battery by applying different *Foster* presumptions to different elements of first-degree kidnapping. We conclude, however, that through the facts as presented at trial, the arguments, and the instructions, the State pointed to the same evidence in order to establish (1) the elements of CSP II and aggravated battery; and (2) the elements of CSP II and first-degree kidnapping. *See State v. Bernal*, 2006-

NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289 ("A double jeopardy claim is a question of law that we review de novo."). We structure our analysis accordingly.

## A.     CSP II and Aggravated Battery

**{9}**     No indicia of distinctness separate the evidence offered to satisfy aggravated battery and the evidence required to satisfy CSP II, which includes force as an element. Both instructions point to the striking and the strangling, and the jury could not consider the two offenses without also considering both the acts of striking and strangling Victim. The aggravated battery instruction refers directly to striking and strangling, and the CSP II instruction required both that (1) the penetration was caused by force or physical violence and (2) it resulted in "bruising in the leg area, of the eye, and of the throat of [Victim]." From the injuries identified in the CSP II jury instruction, we infer that the use of physical force or violence was the striking and the choking. The evidence offered at trial showed that Defendant's choking of Victim resulted in bruising to her throat. Victim also testified that Defendant's choking was so severe that she had difficulty breathing. These injuries were the injuries caused by the same striking and the strangling referenced in the aggravated battery instruction and the result of the same acts. Because these are the same acts, no indicia of distinctness can separate the crimes. *See Sena*, 2020-NMSC-011, ¶ 54; *State v. Phillips*, ___-NMSC-___, ¶ 47, ___ P.3d ____ (S-1-SC-38910, Mar. 4, 2024). No evidence supported distinct conduct for the aggravated battery and CSP II convictions, and we therefore conclude that the conduct underlying both offenses was unitary.

**{10}**     We turn then to the legislative intent. Aggravated battery required findings that Defendant (1) touched or applied force to Victim by striking her with his fists and strangling her, (2) intended to injure Victim, and (3) acted in a way that would likely result in death or great bodily harm. In relevant part, the jury was instructed that CSP II required that Defendant use physical force or violence to cause sexual penetration and that the acts "resulted in bruising" to the leg, eye, and throat. The evidence presented by the State at trial shows that the elements of aggravated battery were subsumed into the elements of CSP II. *See Begaye*, 2023-NMSC-015, ¶ 22 (applying a modified *Blockburger* test). As we have set forth, Victim testified that Defendant punched and choked her and that when Defendant was choking her she "thought [she] was going to die" and stopped struggling with him because she "realized he was going to rape" her and she "did not want to die" and was willing to do "anything [she] could to survive." Victim then stopped struggling, and Defendant sexually penetrated her. Thus, as we explained in the unitary conduct context, the force applied to Victim by striking or strangling to establish aggravated battery is the same force that caused the sexual penetration for CSP II. The intent to injure required for aggravated battery is the use of violence that is required in order to cause sexual penetration for CSP II. The first two elements of aggravated battery therefore are subsumed by the elements of CSP II.

**{11}**     Aggravated battery, for its third element, required that Defendant acted in a way that would likely result in death or great bodily harm. The jury instructions defined great bodily harm as "an injury to a person which creates a high probability of death or results

in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body." CSP II, for its second and third elements, required that Defendant use physical force or physical violence and that "[D]efendant's acts resulted in bruising in the leg area, of the eye, and of the throat of [Victim]." We acknowledge that aggravated battery, as it was charged in the present case, did not require the death or great bodily harm to result— only the likelihood of that type of injury. The act the State relied on to show that likelihood was strangling or choking—the same act that satisfied element two of CSP II. Based on the State's theory of the case, Defendant's act of choking Victim was likely to result in the death or great bodily harm required for aggravated battery and that same act of choking was also the use of physical force or violence required for CSP II that resulted in bruising to Victim's throat. While viewed in the abstract these elements might not appear to subsume, "as the State's case was presented to the jury," the bruising Victim sustained was the result of an act of physical violence that was likely to result in death or great bodily harm. *See State v. Serrato*, 2021-NMCA-027, ¶ 32, 493 P.3d 383, *cert. denied* (S-1-SC-38204, May 4, 2020).

**{12}** Thus, the State could not prove CSP II, as it was instructed, without also proving aggravated battery, as it was instructed. The elements of aggravated battery are therefore completely subsumed by the elements of CSP II, the inquiry is over, and the two convictions violate double jeopardy. *See Begaye*, 2023-NMSC-015, ¶¶ 35-36.

## B.	First-Degree Kidnapping and CSP II

**{13}** To analyze first-degree kidnapping and CSP II, we begin again with the unitary conduct question. The second and fourth elements of first-degree kidnapping required the jury to select either that Defendant intended to and did inflict a physical injury or a sexual offense during the course of the kidnapping. Because the instruction permitted the jury to select between two legal alternatives, we presume the jury selected the sexual offense alternative. *See Foster*, 1999-NMSC-007, ¶ 28. This is because the physical injury alternative by itself does not create a double jeopardy problem. The aggravated battery, as instructed in this case, did not require proof of an actual physical injury. As a result, the charged aggravated battery could not be the same conduct as any physical injury required to establish first-degree kidnapping. On the other hand, the CSP II was the only sexual offense defined for the jury and the jury's view of the legal term "sexual offense" would necessarily have been limited to the same force and penetration that was defined by the CSP II instruction given by the district court. *See Franco*, 2005-NMSC-013, ¶ 8; *see also State v. Autrey*, A-1-CA-38116, mem. op. ¶¶ 14-15 (N.M. Ct. App. Apr. 12, 2022) (nonprecedential), *cert. quashed* (S-1-SC-39383, Feb. 21, 2024).

**{14}** The State argues that the kidnapping and CSP II conduct was distinct because "Defendant completed the kidnapping when he restrained [V]ictim with the intent of inflicting a sexual offense." In *Serrato*, however, this Court rejected the State's argument and held that "the elements of first-degree kidnapping were not satisfied until a sexual offense was committed." 2021-NMCA-027, ¶ 26. The State contends that this language

is contrary our Supreme Court's holdings as exemplified in *Sena*. We disagree, *see Sena*, 2020-NMSC-011, ¶ 35 (relying on the 1997 iteration of the first-degree kidnapping instruction that did not include as an element that the defendant actually inflicted a sexual offense), and decline the State's invitation to overrule *Serrato*. *Cf. Lorenzo*, 2024-NMSC-003, ¶ 10 (rejecting the state's argument that an armed robbery was complete with the threat of force, rather than when all of the elements were satisfied). Because the State does not argue that some sexual offense other than the penetration supported the first-degree kidnapping, we cannot conclude that the first-degree kidnapping was complete before the act of penetration. Accordingly, the conduct underlying the kidnapping and the CSP II convictions was the same and therefore unitary. *See Serrato*, 2021-NMCA-027, ¶ 27.

**{15}**  Turning to legislative intent, again we consider the State's theory of the sexual offenses set forth in the charging documents, jury instructions, and arguments to the jury. *See State v. Porter*, 2020-NMSC-020, ¶ 19, 476 P.3d 1201. As we have noted, the charging documents and jury instructions refer broadly to first-degree kidnapping based on physical injury or sexual offense and the State's legal theory of the case cannot be ascertained from these documents. In opening, the State recounted the attack, described the injuries, depicted the sexual penetration, and summarized, "That's what this trial is about—is to determine whether that was criminal sexual penetration." In closing, the State emphasized that the injuries demonstrated that the sex was not consensual by stating,

> Consensual? We have a biting of a thumb, we got a black eye, we got strangulation, we got . . . bruises and scratches all over the body, we got her running out not getting clothed and fingernail consistent with her story that there was struggle, there was a fight. Stop it there. Is that enough? No, it wasn't. "Sorry I had to do this, but I like you and it's my birthday." So we all know what happened next, she was raped.

The State pointed to no other sexual offense for the jury to rely on for the purposes of first-degree kidnapping. Based on these arguments, we conclude that as the State's case was presented to the jury, the CSP II, which included the elements of injury and penetration, was the sexual offense that formed the basis for the first-degree kidnapping conviction. As a result, the elements of CSP II—the only instructed and argued sexual offense—are subsumed entirely by the elements of first-degree kidnapping that required the jury to find that Defendant intended to and did inflict a sexual offense, the inquiry is over, and the two convictions violate double jeopardy.

**C.  Double Jeopardy Mandates That Defendant's Convictions for Aggravated Battery and CSP II Be Vacated**

**{16}**  When "otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction[s] carrying the shorter sentence[s]." *State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426. Because the convictions for CSP II and aggravated battery carry shorter sentences than first-degree kidnapping, we

remand to the district court to vacate these lesser convictions, uphold the first-degree kidnapping conviction, and resentence Defendant accordingly. *Compare* § 30-4-1(B) (kidnapping in the first degree is a first-degree felony) *and* NMSA 1978, § 31-18-15(A) (2022) (the basic sentence for a first-degree felony is eighteen years imprisonment), *with* § 30-9-11(E) (criminal sexual penetration in the second degree is a second-degree felony) *and* § 31-18-15(A) (the basic sentence for a second-degree felony is nine years imprisonment); *compare also* § 30-9-11(E) *and* § 31-18-15(A), *with* § 30-3-5(C) (aggravated battery inflicting great bodily harm is a third-degree felony) *and* § 31-18-15(A) (the basic sentence for a third-degree felony is three years imprisonment).

{17}    We emphasize that our double jeopardy holding in the present case is the result of the necessary inferences arising from the jury instructions and the State's presentation to the jury. The same facts may have resulted in a different constellation of charges or arguments that may have supported separate crimes. *See Lorenzo*, 2024-NMSC-003, ¶ 11 (noting that "had the [s]tate opted for a different presentation at trial, it is possible that the jury could have decided that different uses of force satisfied the elements of each crime"). Our review, however, is confined to the record that was created. *See id.* (relying on the state's legal theory "as presented in its closing argument" and not an argument "in the abstract"). Because the elements of two of Defendant's three convictions subsume into other convictions, Defendant's right to be free from double jeopardy was violated. *See Begaye*, 2023-NMSC-015, ¶¶ 35-36.

## II.    Defendant's Remaining Arguments

{18}    Defendant also broadly challenges the sufficiency of the evidence supporting the convictions and charges the State with prosecutorial misconduct.

## A.    The Evidence Supports Defendant's Convictions

{19}    Our review of the record demonstrates that as the State points out, Victim's testimony established every element of each remaining conviction beyond a reasonable doubt and supported Defendant's convictions for first-degree kidnapping and interference with communications. *See State v. Jimenez*, 2017-NMCA-039, ¶ 23, 392 P.3d 668 (stating that in a sufficiency of the evidence challenge we review "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction" (internal quotation marks and citation omitted)); *cf. State v. Samora*, 2016-NMSC-031, ¶¶ 2, 34-35, 387 P.3d 230 (reviewing a challenge to similar charges and concluding that the victim's testimony was sufficient to support the defendant's convictions despite reversing on other grounds). We have already set forth the evidence supporting the kidnapping conviction, and otherwise, Victim testified that when Defendant heard a voice coming from her cell phone, Defendant took and threw the phone away. *See* NMSA 1978, § 30-12-1(D) (1979) (prohibiting "knowingly and without lawful authority . . . preventing, obstructing or delaying the sending, transmitting, conveying or delivering in this state of any message, communication or report by or

through telegraph or telephone"). Therefore, we reject Defendant's claim that there was insufficient evidence to support the convictions.

## B.      Defendant Does Not Establish Prosecutorial Misconduct

**{20}**    Defendant also argues that the State committed prosecutorial misconduct during closing argument by improperly commenting on Defendant's prearrest flight and Defendant's decision not to testify at trial. "The Fifth Amendment protects a defendant's decision not to testify at trial from prosecutorial comment" as well as a defendant's "right to remain silent when taken into custody." *State v. DeGraff*, 2006-NMSC-011, ¶¶ 8, 12, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V. ("No person shall . . . be compelled in any criminal case to be a witness against himself."). This protection is violated when a prosecutor "asks the jury to draw an adverse conclusion from the defendant's failure to testify." *DeGraff*, 2006-NMSC-011, ¶ 8. We review prosecutorial comment on a defendant's silence de novo. *State v. Lobato-Rodriguez*, ___-NMSC-___, ¶ 12, ___P.3d ___ (S-1-SC-39294, Jan. 22, 2024). We first determine whether the statement was an improper comment on silence. *Id.* If it was not, our analysis concludes. If the statement *was* an improper comment on silence, we consider whether the State established that error was harmless (if it was preserved) or fundamental (if it was not). *DeGraff*, 2006-NMSC-011, ¶ 12. We examine each of the challenged statements in turn.

**{21}**    Defendant first argues that the following statement during closing argument was an impermissible comment on Defendant's prearrest silence:

> But what's also striking, we have the Defendant living here in this community, seen according to Officer Martinez, she thinks almost every day that summer. And this incident happened. Police respond, an investigation ensues and poof. Officer Martinez does not see this individual again she said until he's arrested in Colorado and brought back on this warrant. That's her testimony. Coincidence? That's what we call consciousness of guilt!

To the extent such statements could be regarded as a comment on prearrest "silence," they may have encouraged the jury to convict Defendant on improper grounds, which would establish error. *See id.* ¶¶ 17, 23. Nevertheless, any error was unpreserved and is reviewed only to determine whether the error was fundamental. *Id.* ¶ 17. In *DeGraff*, similar comments on a defendant's prearrest absence were not fundamental error because the Court discerned "a reasonable argument that the comments did not directly call on the jury to infer guilt from [the d]efendant's silence." *Id.* ¶ 23. Similarly in the present case, these statements reasonably called on the jury to consider Defendant's sudden flight to show consciousness of guilt and to demonstrate inconsistency with the defense that Victim consented to sexual intercourse. *See State v. Baca*, 1990-NMCA-123, ¶ 30, 111 N.M. 270, 804 P.2d 1089 ("[E]vidence of defendant's flight . . . is admissible as proof of a guilty conscience" and "proof of a tacit admission of guilt."). As a result, any error does not rise to the level of fundamental error.

**{22}** Defendant also argues that other statements by the State in closing argument commented on Defendant's rather sudden decision not to testify. For context, we offer some additional background. *See DeGraff*, 2006-NMSC-011, ¶ 8 ("We evaluate the statement in context to determine the manifest intention that prompted the remarks as well as the natural and necessary impact upon the jury." (internal quotation marks and citation omitted)). After Defendant declined to testify when called by his attorney, the district court instructed the jury that Defendant had no burden to present evidence, and the State requested guidance from the district court about how to address in closing Defendant's arguments during opening statements that the encounter was consensual. The district court allowed the State to remind the jury that counsel's argument is not evidence and to comment on the lack of evidence regarding consent. The district court warned the State to avoid mentioning that Defendant did not testify. The State proceeded with closing argument, during which Defendant objected that the State was getting close to commenting on Defendant's silence. The district court overruled the objection and allowed the State to continue "so long as there is no direct commentary" regarding Defendant's failure to testify. The prosecutor again continued with argument and made the following challenged statements without further objection from Defendant:

> Never at any point did you hear any evidence that our victim agreed to any of this. *What you did hear from our victim was, again not painting herself as some angel, knowing that there may be judgment passed. What did she say? She thought they were going to get high on marijuana. She's not painting herself as an angel or trying to hide her willingness to get high, go get drunk, do recreational drugs. Her story stayed consistent. Consistent. Let's hang out, let's drink, let's meet people.* Never during the course of this trial did you hear she consented to any type of sex or physical contact, ever. Never to have sex, never to be physically beaten, and never to being raped. Nothing that ever entered evidence in this trial.

On appeal, Defendant argues that this statement commented on his decision not to testify but omits the italicized language from his brief and relies on *State v. Costillo*, 2020-NMCA-051, 475 P.3d 803.

**{23}** Unlike in *Costillo*, however, the State's theory of the case here did not "suggestively and unabashedly" rest on Defendant's failure to proclaim his innocence. *See id.* ¶ 17 (concluding that the state's questions and arguments "proactively utilized [the d]efendant's invocation of his right to remain silent as an indicium of his guilt" and violated the right to remain silent that is protected by the Fifth Amendment). The State contends that "[t]he manifest intent of the prosecutor was to clarify what the evidence in the case actually showed" and "[t]he jury would not 'naturally and necessarily' take the reminder of what the evidence actually showed as a comment on Defendant's silence." We agree. *See DeGraff*, 2006-NMSC-011, ¶ 8 (explaining that a prosecutor's statement is a comment on a defendant's protected silence if "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's exercise of his or her right to remain silent." (internal quotation marks and citation omitted)). Viewing the prosecutor's comments in

the context of the State's broader argument and the trial as a whole, we conclude that the comments at issue were not erroneous.

{24}    Broadly, the State's remarks were a comment on Victim's testimony and the evidence presented regarding the nature of the encounter between Victim and Defendant. *See Jimenez*, 2017-NMCA-039, ¶ 76 (noting that to be permissible a prosecutor's statements must be based on the evidence and that a prosecutor may draw reasonable inferences therefrom). As the State points out, the comments were a response to Defendant's arguments in opening. Defendant argued that the evidence would show that Victim consented to having sex with Defendant and referred to the following: (1) Victim followed Defendant to the motel; (2) Defendant had no documented injuries that would indicate Victim fought Defendant; (3) during a police interview, Victim admitted to "French kissing" Defendant; (4) Victim's bruises may have been older than the day of the assault; and (5) Victim's attitude during interviews after the assault was "cheery." Defendant denied in opening that the sex was not consensual and characterized the case as "he said, she said," but ultimately elected not to take the stand. The State did not reference Defendant's decision not to testify but instead responded to the lack of evidence supporting many of Defendant's statements during opening argument—evidence that would have been available from testimony apart from Defendant's. *See id.* (noting that a prosecutor's statements may be in response to the defendant's argument); *see also State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64 ("Where the defendant 'opens the door' to comments by the prosecutor, such comments are invited and do not constitute reversible error, even if such comments are improper."); *State v. Smith*, 2001-NMSC-004, ¶¶ 39-40, 130 N.M. 117, 19 P.3d 254 (explaining that "under certain circumstances, defense counsel may 'open the door' during an opening statement to comments by the prosecutor during closing" (internal quotations marks and citation omitted)).

{25}    The district court instructed the jury that (1) it was the State's burden to prove Defendant's guilt beyond a reasonable doubt; (2) they "must not draw any inference of guilt from the fact that [D]efendant did not testify in this case"; and (3) "[w]hat is said [by the lawyers] in the arguments is not evidence." We conclude that the district court properly exercised its discretion in controlling closing argument, and we presume that the jury followed the written instructions. *See Smith*, 2001-NMSC-004, ¶ 40. Therefore, in light of the broader context of trial, we conclude that the prosecutor's statements regarding consent do not constitute a comment on Defendant's protected silence and reject Defendant's claim that his conviction was "tainted" by prosecutorial misconduct. *See Jimenez*, 2017-NMCA-039, ¶ 78.

**CONCLUSION**

{26}    For the reasons stated herein, we reverse and remand for the district court to vacate Defendant's convictions for CSP II and aggravated battery and resentence Defendant. Otherwise, we affirm.

{27}    **IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**MEGAN P. DUFFY, Judge**