# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-029**

**Filing Date: February 4, 2020**

**No. A-1-CA-37558**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SARITA JONES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Released for Publication June 23, 2020.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**B. ZAMORA, Judge.**

**{1}** At issue in this appeal is the district court's refusal to instruct the jury on Sarita Jones's (Defendant's) theory that she acted in defense of another against use of excessive force by a police officer. We hold for the first time in New Mexico that defense of another against use of excessive force by a police officer is a viable defense, and we apply the standard announced in *State v. Ellis*, 2008-NMSC-032, 144 N.M. 253, 186 P.3d 245, involving self-defense claims against police officers. We conclude that Defendant was entitled to a defense of another instruction against the use of excessive

force by police officers directed at her son. We thus reverse Defendant's convictions for battery upon a peace officer (NMSA 1978, § 30-22-24 (1971)), and resisting or abusing a peace officer (NMSA 1978, § 30-22-1(D) (1981)) and remand this case to the district court for a new trial.

**BACKGROUND**

**{2}** The following facts are derived from testimony and video evidence presented at trial. Officers John Hong and Raphael Aguilar were dispatched to Defendant's home in reference to a domestic dispute. Officer Hong arrived first, and as he approached the house, he saw the front door slam shut and heard yelling from inside the home. After knocking loudly and announcing his presence, Officer Hong asked Defendant and her two sons to step outside of the house for safety reasons. Although they were resistant at first, all three eventually came outside and stood on the porch. While Officer Hong was attempting to ascertain their identities and investigate the situation, Defendant's son, Corey, stepped inside the house and closed the door. Almost immediately, Corey opened the door, yelled at his brother and Sergeant Aguilar, who had just arrived and was walking across the front lawn. Sergeant Aguilar immediately pulled his taser and ordered Corey to the ground, advancing into the house as Corey retreated with his hands raised. Sergeant Aguilar knew that Corey had a warrant for his arrest and intended to arrest Corey because of the warrant, but he did not convey this information to Corey or Defendant at the time of the arrest. However, Sergeant Aguilar testified that another officer had informed Corey and Defendant a "couple weeks" prior that Corey had an outstanding warrant for his arrest. As Sergeant Aguilar advanced towards Corey, Officer Hong drew his taser as well and pointed it at Corey. Defendant testified that when she saw the officers with tasers drawn and pointed at her son, she believed the weapons were guns and attempted to place herself between the officers and her son. Defendant grabbed Sergeant Aguilar's wrist. Sergeant Aguilar fired the taser at Corey but struck Defendant instead. Officer Hong's lapel video captured the incident, all of which occurred within a few minutes.

**{3}** At trial the district court denied Defendant's request for a defense of another jury instruction. Defendant was found guilty of battery upon a peace officer and resisting or abusing an officer. Defendant appeals her convictions.

**DISCUSSION**

**I.     The District Court Erred in Denying Defendant's Defense of Another Instruction**

**{4}** At the outset, we note that the district court denied Defendant's request for a defense of another jury instruction finding it was not a viable defense because the "law does not allow" for defending another against excessive force by a police officer. We disagree and hold that defense of another against use of excessive force by a police officer is a viable defense as set forth below.

## A.      Defense of Another Against Excessive Police Force

**{5}**      Defendant argues that under the facts and circumstances of this case she was entitled to a defense of another instruction to the same extent that Corey would have been entitled to a self-defense instruction. The State agrees on the law, specifying that the controlling case on use of self-defense against a police officer, *Ellis*, 2008-NMSC-032, should apply when a defense of another instruction is requested in the context of alleged excessive police force.[1]

**{6}**      We agree with the parties that controlling case law on use of self-defense against a police officer applies with full force in this case, involving defense of another. New Mexico "[c]ase law and commentary treat 'defense of another' and 'self-defense' as virtually identical for purposes of analysis." *State v. Sandoval*, 2011-NMSC-022, ¶ 16, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted); *State v. Gallegos*, 2001-NMCA-021, ¶ 7, 130 N.M. 221, 22 P.3d 689 (using "self-defense" interchangeably with "defense of another"); *State v. Duarte*, 1996-NMCA-038, ¶ 3, 121 N.M. 553, 915 P.2d 309 (relying on self-defense theory to analyze instructions for defense of another); *see also* UJI 14-5182 NMRA comm. cmt. (referring specifically to UJI 14-5181 NMRA (self-defense) in the defense of another instruction); *cf.* NMSA 1978, § 30-2-7 (1963) (distinguishing justifiable homicide without differentiating between defense of self and defense of family or others, in certain circumstances). Because we analyze self-defense and defense of another claims similarly, we see no reason, and the parties have provided us none, why the defense of another defense would be unavailable to a defendant when an officer uses excessive force. *See State v. Orosco*, 1982-NMCA-181, ¶ 10, 99 N.M. 180, 655 P.2d 1024 (acknowledging that the defendant had successfully raised defense of another in response to a misdemeanor charge for resisting and abusing an officer based on the defendant's action in protecting his father, and that this identical defense could be used to defeat the battery upon a police officer charge arising from the same incident). We thus look to New Mexico law on self-defense against the use of excessive force by a police officer to determine the availability of the defense of another defense in this context.

**{7}**      In New Mexico, a person has a limited right of self-defense against a police officer using excessive force. *See State v. Kraul*, 1977-NMCA-032, ¶ 29, 90 N.M. 314, 563 P.2d 108 (holding that a person has a limited right "to defend oneself from a police officer[,]" regardless of "whether the attempted arrest is lawful or unlawful"). In *Ellis*, our Supreme Court outlined the standard to apply in cases involving self-defense claims against police officers. *See generally* 2008-NMSC-032, ¶¶ 14-42. The Court concluded that the right to self-defense against a police officer is not absolute; it does not exist if the officer is "using necessary force to effect an arrest." *Id.* ¶ 16 (internal quotation marks and citation omitted). However, if "some evidence of excessive force" is presented, an "instruction on self-defense is required." *Id.* (internal quotation marks and

---

[1]Although Defendant contends that the standard used in *Ellis* is inappropriate because it is based on a civil standard, she concedes that this Court is bound by our Supreme Court's decision in *Ellis* and "we do not have the authority to overrule it." *Romero v. Laidlaw Transit Servs., Inc.*, 2015-NMCA-107, ¶ 15, 357 P.3d 463. Thus, we do not address this argument.

citation omitted). Given the similar treatment of self-defense and defense of another by our courts, we apply the *Ellis* standard, as the parties have done, to determine whether a jury should be instructed that a defendant was defending another against the use of excessive force by a police officer.[2]

## B.    Application of *Ellis* Standard in Defendant's Case

**{8}**    Having concluded that the *Ellis* standard applies in determining whether a jury should be instructed on defense of another, we apply it to the facts of this case. The propriety of jury instructions is a mixed question of law and fact that we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *See State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69. "We view the evidence in the light most favorable to the giving of the requested instruction." *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139. If a defendant presents any evidence, even slight, to support a jury instruction, he is entitled to the instruction. *Id.* ¶ 8.

**{9}**    A defendant is only entitled to a defense of another jury instruction if an officer used force against another that was unreasonable and unnecessary. *See Ellis*, 2008-NMSC-032, ¶ 17. "Generally, the question of the reasonableness of the actions of the officer is a question of fact for the jury." *Id.* (alteration, omission, internal quotation marks, and citation omitted). However, a court may determine as a matter of law that reasonable minds of the jurors could not differ as to whether the officer used excessive force. *Id.* To make this determination, the court must evaluate whether an objectively reasonable officer on the scene would have acted similarly in light of the facts and circumstances of the case, including the severity of the crime at issue, whether the suspect poses a threat to the safety of others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* ¶ 26. The objective standard, based on a "reasonable officer's opinion about the use of force," takes into consideration the "fact that police officers are often forced to make split-second

---

[2]Our conclusion is reinforced by similar holdings in other jurisdictions that have recognized the right of defense of another against the use of excessive force by a police officer. *See, e.g., People v. Bailey*, 439 N.E.2d 4, 9 (Ill. App. Ct. 1982) (recognizing "defense of another against excessive force in the effectuation of an arrest"); *Commonwealth v. Miranda*, 928 N.E.2d 664, 668-69 (Mass. App. Ct. 2010) (holding that the defendant was entitled to an instruction on defense of another on her interaction with a state trooper engaged in a scuffle with a third party); *Batson v. State*, 941 P.2d 478, 483 (Nev. 1997) ("hold[ing] that a person may defend another only where that person has witnessed a police officer's unlawful and excessive use of force, and only where the individual being 'rescued' is facing imminent and serious bodily harm at the hands of the police officer"); *State v. Gelinas*, 417 A.2d 1381, 1386 (R.I. 1980) ("[W]e hereby adopt the rule that one who comes to the aid of an arrestee must do so at his own peril and should be excused only when the individual would himself be justified in defending himself from the use of excessive force by the arresting officer."); *Letson v. State*, 805 S.W.2d 801, 805 (Tex. App. 1990) (providing that defense of another against a police officer requires "evidence that a police officer was using or attempting to use excessive force"). The jurisdictions that have recognized defense of another against excessive police force are "split in terms of the circumstances under which an intervener may use force in defending another from excessive police force." Kindaka Sanders, *A Reason to Resist: The Use of Deadly Force in Aiding Victims of Unlawful Police Aggression*, 52 San Diego L. Rev. 695, 732 (2015).

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* ¶¶ 26, 28 (internal quotation marks and citation omitted). "The [s]tate must prove to the jury that the officer met an objectively reasonable standard in employing force against the defendant." *Id.* ¶ 31.

**{10}** Applying the *Ellis* standard to the facts here, we conclude that reasonable minds could differ as to whether the officers used excessive force against Corey. We cannot evaluate the severity of the crime that was the basis for the arrest warrant because the State did not present any evidence as to the nature of the original crime, let alone whether the officers had reason to be wary for his safety. And, the State only put on evidence that the officers were called because of domestic issues and yelling within the home. Likewise there was insufficient evidence that Corey posed a threat to the officers. While unquestionably Corey was arguing loudly with his family and screaming profanities, both officers testified that Corey never threatened anyone. Indeed, Sergeant Aguilar testified that even though Corey was difficult to deal with, Corey was not threatening during this incident and was never threatening during past encounters. Although Officer Hong testified that he was somewhat concerned that Corey could have retrieved a weapon when he briefly went inside and closed the door, he never testified to acting on this concern. Finally, at the time Sergeant Aguilar drew and pointed his taser at Corey and advanced on him, Corey had not yet resisted or evaded arrest. Based on these facts, we conclude that the reasonableness of the officers' actions remained a "question of fact for the jury." *Ellis*, 2008-NMSC-032, ¶ 17 (internal quotation marks and citation omitted).

**{11}** The State argues that like the defendant in *Ellis*, Corey "repeatedly disobeyed the [officer's] commands, . . . actively resisted the [officer's] attempts to regain control of the situation, [and] flaunted the [officer's] authority[.]" *Id.* ¶ 40. We disagree with this comparison. In *Ellis*, the defendant was "both physically and verbally hostile" towards the police officer. *Id.* ¶ 37. The defendant was aggressively approaching the officer, and the defendant "was aware that his actions affected" the officer because the police officer "was shaking during the encounter[.]" *Id.* ¶ 38 (internal quotation marks omitted). Here, Corey did not approach Sergeant Aguilar and retreated with his hands raised when the officer drew his taser and advanced towards him. While Corey was clearly being uncooperative with Officer Hong, Sergeant Aguilar gave Corey mere seconds to comply with his commands. Finally, the video indicates that Officer Hong was on the path to gaining control of the situation before Sergeant Aguilar arrived because the other members of the household had calmed down and were communicating with him. Defendant's case is distinguishable from *Ellis*.

**{12}** For the reasons stated above, we conclude the district court erred by failing to instruct the jury on defense of another against the use of excessive force by a police officer.

## II.    Double Jeopardy Challenge

**{13}** Defendant argues that her convictions for battery upon a peace officer and resisting or abusing a peace officer violate the double jeopardy guarantee against multiple punishments for the same conduct and that the district court's "merger" of the two offenses was insufficient to remedy the violation. The State concedes this error. Because this issue is likely to arise again on retrial if Defendant is convicted of both offenses, we briefly address Defendant's claim. If the State relies on unitary conduct for both convictions, Defendant's convictions for battery upon a peace officer, § 30-22-24, and resisting or abusing a peace officer, § 30-22-1(D), would violate double jeopardy. *See State v. Ford*, 2007-NMCA-052, ¶¶ 18-23, 141 N.M. 512, 157 P.3d 77 (concluding convictions, based on unitary conduct, for battery upon a peace officer, § 30-22-24, and resisting or abusing a peace officer, § 30-22-1(D), violate double jeopardy because resisting or abusing a peace officer is a lesser-included offense of battery upon a peace officer). The appropriate remedy for such a double jeopardy violation is vacation of the lesser offense of resisting or abusing a peace officer. *See State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[T]he general rule requires that the lesser offense be vacated in the event of impermissible multiple punishments." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{14}** For the foregoing reasons, we reverse Defendant's convictions for battery upon a peace officer and resisting or abusing a peace officer and remand for a new trial consistent with this opinion.

**{15}  IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**