This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36786**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JAVIER SANCHEZ a/k/a
CHRISTIAN GONZALEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Alisa A. Hart, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Javier Sanchez appeals his convictions for two counts of aggravated assault with a deadly weapon in violation of NMSA 1978, Section 30-3-2(A) (1963), one count of battery on a peace officer in violation of NMSA 1978, Section 30-22-24 (1971), and one count of resisting, evading, or obstructing an officer (resisting or abusing an officer) in violation of NMSA 1978, Section 30-22-1(D) (1981). Defendant argues that the district court abused its discretion by (1) admitting photos of Defendant's apartment

without advance notice by the State, (2) denying Defendant's motion for mistrial based on a question by the prosecutor during Defendant's cross-examination, and (3) allowing Defendant's girlfriend to testify regarding Defendant's other acts. Defendant also argues that his convictions violate double jeopardy and were not supported by the evidence. We vacate Defendant's conviction for resisting or abusing an officer but affirm his other convictions.

**BACKGROUND**

**{2}** On April 20, 2016, Albuquerque police officers responded to a call at the Cinnamon Tree Apartment complex in Albuquerque "regarding a male with a gun." Defendant's neighbors had initially called the police because of a loud altercation in Defendant's apartment between Defendant and his sisters and girlfriend, Gabrielle Gallegos. When the argument spilled out of the apartment and into the common areas of the apartment complex, Defendant's neighbors became involved, and Defendant pointed a gun at them.

**{3}** When officers arrived on the scene, they directed everyone present to "get on the ground." Defendant did not and instead walked toward the officers, disobeying their repeated commands to get on the ground. Although Defendant had his hands raised in a sign of surrender, the officers believed that "all his other actions said a totally different thing" and found that Defendant was non-compliant with their orders. The officers took Defendant to the ground to handcuff him, which involved a struggle. After a few minutes, officers picked Defendant up to move him to a patrol car. When they stood him up, Defendant spit on Officer Kacy Ramos.

**{4}** Defendant was charged with one count of battery upon a peace officer; three counts of aggravated assault with a deadly weapon; one count of resisting, evading, or obstructing an officer; and one count of concealing identity. At his first trial, a jury found Defendant guilty of concealing his identity, and he was acquitted by directed verdict of one count of aggravated assault with a deadly weapon. The jury hung on the other charges and the court declared a mistrial. At Defendant's second trial, he was found guilty of two counts of aggravated assault with a deadly weapon; resisting, evading, or obstructing an officer; and battery on a peace officer. Defendant appeals.[1]

## I. The District Court Did Not Abuse Its Discretion in Its Evidentiary Rulings

**{5}** Defendant argues that the district court erred in several of its evidentiary rulings, bundling together several different pieces of evidence in an argument that we attempt to untangle. As we understand his briefs, Defendant argues that the district court erred by (1) admitting photos of his apartment without advance notice by the State, (2) denying Defendant's motion for a mistrial based on a question by the prosecutor, and (3) permitting Gallegos to testify regarding Defendant's other acts. We are not persuaded.

---

1Because the parties are familiar with the factual and procedural background, we reserve further discussion of the pertinent facts for the discussion section.

**{6}** "We review the [district] court's decision to admit evidence . . . for [an] abuse of discretion." *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Bailey*, 2017-NMSC-001, ¶ 12, 386 P.3d 1007 (internal quotation marks and citation omitted).

## A. The District Court Did Not Abuse Its Discretion by Admitting Photos Without Advance Notice by the State

**{7}** Defendant appears to argue that he was not given notice that photos of his apartment would be used as Rule 404(B) evidence during the trial. *See* Rule 11-404(B)(2) NMRA ("In a criminal case, the prosecution must . . . provide reasonable notice of the general nature of . . . evidence [of a crime, wrong, or other act] that the prosecutor intends to offer at trial, and . . . do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice."). To the extent that Defendant's briefs can be read to challenge the admission of the photos, Defendant makes this challenge for the first time on appeal. Because Defendant did not object to the admission of the exhibits, we review for plain error. *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (stating that we review unpreserved evidentiary questions for plain error). "To find plain error, [we] must be convinced that admission of the [evidence] constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted).

**{8}** The thrust of Defendant's argument with respect to the photos is not that the photos themselves were inadmissible, but that the State improperly used the photos after their admission to suggest to the jury that Defendant had committed acts of domestic violence during the argument with Gallegos and his sisters. Defendant nowhere explains how the photos, standing alone, were inadmissible and fails to develop an argument that their admission, if erroneous, rises to the level of plain error. We will not develop Defendant's arguments for him on appeal. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be. To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them." (alteration, internal quotation marks, and citation omitted)). Accordingly, we decline to address Defendant's challenge to the admission of the photos.

## B. The District Court Did Not Err by Denying Defendant's Motion For Mistrial

**{9}** Defendant argues that the district court should have granted his motion for a mistrial because the prosecutor impermissibly implied on cross-examination that a photo, admitted as Exhibit 20, depicted a shattered glass object that Defendant had thrown at Gallegos. We review a trial court's denial of a mistrial motion for an abuse of discretion. *State v. Gallegos*, 2009-NMSC-017, ¶ 21, 146 N.M. 88, 206 P.3d 993. We

conclude that the district court did not abuse its discretion by denying the motion and instead giving a curative instruction.

**{10}** At trial, Defendant testified that a different photo exhibit showed a messy apartment, and that the mess was the subject of the verbal altercation with Gallegos. In response, the prosecutor questioned him about "broken glass" that could be seen in Exhibit 20. The prosecutor asked whether the broken glass resulted from "something that [Defendant] threw at [Gallegos] during the fight[.]" This question drew an objection from defense counsel, who argued that the question sought to elicit testimony about an instance of domestic violence immediately preceding Defendant's altercation with his neighbors. Although the district court believed that the question went to Defendant's credibility because his earlier testimony at trial was that "it was just a verbal argument," it acknowledged that the question was "related to an unnoticed prior bad act." The court reserved ruling on the issue and recessed for the day, and, when trial resumed, Defendant requested a mistrial. The district court denied the motion and, after consulting with counsel for both parties, gave the following curative instruction: "[W]hen we left yesterday, there had been an objection by defense to a question. I sustained that objection. If you recall the question, you're to disregard the question. And I just want to remind you of a prior instruction that a question is not evidence. The evidence is the testimony and exhibits that are admitted into evidence and any facts that are stipulated by the parties."

**{11}** We begin with the presumption that the jury followed the curative instruction and therefore did not consider the question at issue. *See State v. Sellers*, 1994-NMCA-053, ¶ 28, 117 N.M. 644, 875 P.2d 400 ("There is a presumption that the jury follows the instructions they are given."); *see also State v. Allen*, 2000-NMSC-002, ¶ 110, 128 N.M. 482, 994 P.2d 728 (finding that after "[r]eviewing all of the comments . . . in the context in which they occurred . . . the prosecutor's remarks did not deprive [the d]efendant of a fair trial" because "the trial court's curative instruction was sufficient to offset any prejudicial effect due to the lawyers' erroneous statements" (alterations, internal quotation marks, and citations omitted)). Even granting the possibility that the prosecutor's question influenced the jury to interpret the photographs as showing that Defendant had thrown a glass object at Gallegos, and the possibility that this interpretation increased the likelihood of the jury finding guilt on the basis of a belief that Defendant's alleged crimes were consistent with his character, we do not think that this potential prejudice is sufficient to overcome the presumption that the curative instruction was effective. Considering all of the evidence concerning Defendant's actions, we cannot say the district court abused its discretion by choosing to use a curative instruction to address the possibility that the jury would fall into a line of propensity reasoning. This was a single question during a two-day trial, in which both of the victims of Defendant's assaults testified that he was the first aggressor, and the State did not refer to the content of the question during its closing argument or at any other point after the question was asked. Defendant has not persuaded this Court that the district court abused its discretion by denying the motion and instead issuing a curative instruction.

**{12}** Defendant compares his case to *State v. McClaugherty*, 2003-NMSC-006, ¶¶ 11-14, 133 N.M. 459, 64 P.3d 486, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110, but we do not see how that case has any bearing on this one. In *McClaugherty*, our Supreme Court held that reversal was required where the prosecutor's questions suggested to the jury that the prosecutor was aware of statements by other witnesses that contradicted the defendant's testimony and that were inadmissible hearsay. *Id.* ¶ 35. Whereas nothing in *McClaugherty* indicates that the trial court in that case disallowed the pertinent testimony and issued a curative instruction, the district court in this case did both.

**{13}** We hold that the district court did not abuse its discretion when it denied Defendant's motion for a mistrial.

### C.    The District Court Did Not Abuse Its Discretion by Admitting Gallegos's Testimony Regarding Defendant's Other Acts

**{14}** Defendant argues that the prosecutor's questioning of Gallegos on cross-examination was improper under Rules 11-403 and -404 NMRA. We conclude that the questioning was permissible impeachment by prior inconsistent statements.

**{15}** Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). However, Rule 404(B)(2) expressly provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Thus, "Rule 11-404(B) is a rule of inclusion, not exclusion, providing for the admission of all evidence of other acts that are relevant to an issue in trial, other than the general propensity to commit the crime charged." *Bailey*, 2017-NMSC-001, ¶ 14 (alteration, internal quotation marks, and citation omitted). "[P]rior inconsistent statements are inherently relevant for [the] 'non-hearsay' purpose[ of] impeaching a witness's credibility." *State v. Astorga*, 2015-NMSC-007, ¶ 31, 343 P.3d 1245. Rule 11-403 provides that evidence may be excluded "if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of *unfair* prejudice." *Otto*, 2007-NMSC-012, ¶ 16 (alteration, internal quotation marks, and citation omitted). Thus, when "the tendered evidence serves a legitimate purpose other than character or propensity, . . . that legitimate purpose should be balanced against the jury's tendency to use the evidence illegitimately." *State v. Ruiz*, 1995-NMCA-007, ¶ 12, 119 N.M. 515, 892 P.2d 962.

**{16}** In this case, the potential bad acts evidence at issue was not admitted for the purpose of proving Defendant's character. Instead, Gallegos's statements regarding Defendant's prior acts were admitted for the purpose of impeaching her. Defense counsel explained to the district court that his entire purpose in calling Gallegos was to rebut any inference that there was a physical altercation inside of the apartment arising

from the State's prior question regarding the photograph of the broken glass, which the court had by that point instructed the jury to disregard. On direct examination, Gallegos testified that "everything just started escalating after the neighbors got involved." On cross examination, Gallegos testified that her argument with Defendant was merely verbal and "over [Defendant's] keys" because she did not want him to leave the apartment. She also testified that Defendant did not push her—at least not by "pushing [her,] pushing [her]"—but that he tried to move her because she was blocking his exit from the apartment. The State sought to impeach Gallegos with her police statement from the night of the altercation in which she told police, among other things, that Defendant had "pushed [her] to the ground." Defendant repeatedly objected to the impeaching questions, specifically citing Rule 11-403, but the district court overruled the objection. Gallegos ultimately acknowledged that she, Defendant's sisters, and Defendant had all "trashed" the apartment during the argument.

{17}    Balancing the probative value of the out-of-court statements as impeachment evidence against their probable prejudicial effect and applying our deferential standard of review, we conclude that the district court did not abuse its discretion in admitting the evidence of Gallegos's prior statement. Self-defense was a central issue at trial, and Gallegos's testimony prior to her impeachment buttressed the defense's theory that Defendant's neighbors had been the initial aggressors in the altercation between them and Defendant. It was not unreasonable for the district court to conclude that the value of the impeachment evidence was not substantially outweighed by the danger that the jury would rely on propensity reasoning.

## II.    Defendant's Convictions for Resisting Arrest and Battery on a Peace Officer Violate Double Jeopardy

{18}    Defendant next argues that his convictions for both resisting arrest by "resisting or abusing" an officer in violation of Section 30-22-1(D) and battery on a peace officer in violation of Section 30-22-24 violate double jeopardy because the record does not indicate whether he was convicted of both crimes for the single act of spitting on Officer Ramos. We agree.

{19}    Double jeopardy presents "a question of law, which we review de novo." *State v. Montoya*, 2013-NMSC-020, ¶ 22, 306 P.3d 426. The Fifth and Fourteenth Amendments of the United States Constitution protect against successive prosecutions for the same offense and against multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223. There are two types of multiple punishment cases: (1) unit-of-prosecution cases, where an individual is convicted of multiple violations of a single criminal statute; and (2) double-description cases, in which an individual is convicted under multiple statutes for a single act. *Id.* ¶¶ 8-9. Battery on a peace officer and resisting or abusing an officer are crimes defined in separate statutes, and Defendant's double jeopardy challenge therefore raises double-description concerns. "In analyzing double-description challenges, we employ [a] two-part test, set out in *Swafford*[, under] which we examine[] (1) whether the conduct is unitary, and, if

so, (2) whether the Legislature intended to punish the offenses separately." *State v. Gonzales*, 2019-NMCA-036, ¶ 14, 444 P.3d 1064.

**{20}**   Defendant contends, the State does not dispute, and we agree that Defendant's convictions for battery on a peace officer and resisting or abusing an officer would violate double jeopardy if both convictions were based on Defendant's spitting on Officer Ramos. *See State v. Porter*, 2020-NMSC-020, ¶ 14, 476 P.3d 1201 (concluding that the unitary conduct prong was satisfied where the conduct at issue was the "act of shooting a single bullet"); *State v. Jones*, 2020-NMCA-029, ¶ 13, 464 P.3d 1079 ("If the State relies on unitary conduct for both convictions, . . . convictions for battery upon a peace officer, § 30-22-24, and resisting or abusing a peace officer, § 30-22-1(D), . . . violate double jeopardy."). Thus, the only question before us is whether Defendant's act of spitting formed the factual underpinning for both convictions. To answer this question, we begin by examining the elements of the statutes at issue as conveyed by the jury instructions given at trial. *See State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 ("The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." (internal quotation marks and citation omitted)); *id.* ¶¶ 8-10 (examining the jury instructions to determine the evidence on which the jury could have relied in returning a guilty verdict).

**{21}**   The given elements instruction on the offense of battery upon a peace officer required the jury to find that Defendant "intentionally touched or applied force to [Officer] Ramos by spitting on him." In contrast, the instruction on the offense of resisting or abusing an officer did not specify the conduct that formed the basis for that charge. Instead, the instruction permitted the jury to convict Defendant upon finding that he "resisted or abused [Officer] Ramos . . . while [Officer Ramos was] in the lawful discharge of . . . [his] duties." Thus, the resisting instruction provided two alternative bases to convict: a finding that Defendant "resisted" Officer Ramos *or* a finding that Defendant "abused" Officer Ramos. Because the jury returned a general verdict, the record does not indicate the alternative on which the jury relied.

**{22}**   Under these circumstances, we use a two-step methodology drawn from our understanding of *State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, and our Supreme Court's recent clarification of that case in *State v. Sena*, 2020-NMSC-011, ¶ 47, 470 P.3d 227. In *Foster*, our Supreme Court held that courts must "presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy[] and the record does not disclose whether the jury relied on this legally inadequate alternative." 1999-NMSC-007, ¶ 28; *see generally Sena*, 2020-NMSC-011, ¶ 47 (observing that the *Foster* court reached this holding on the pragmatic ground that courts "cannot assume that jurors will know how to reach a verdict without violating the Double Jeopardy Clause"). The first step in our analysis is to apply the *Foster* presumption. Examining the jury instructions in light of the evidence presented at trial, we presume that the jury relied on any alternative basis or set of alternative bases for conviction that permitted a finding of guilt for unitary conduct. *See Sena*, 2020-NMSC-011, ¶¶ 52, 54 (presuming that the jury relied on the alternative predicate offense of battery contained in the jury instructions

where, because the jury returned a general verdict, it was "indeterminate upon which alternative the jury relied," *id.* ¶ 54); *Foster*, 1999-NMSC-007, ¶¶ 29-30 (presuming that "the jury [found] that the victim was held for service 'by force' " where the given instructions permitted the jury to find that a kidnapping was "accomplished by force, deception, or a combination of the two"); *see also Franco*, 2005-NMSC-013, ¶ 11 (presuming unitary conduct because "the jury could have based its verdict on the . . . [d]efendant['s] possess[ion of] the cocaine at the time she threw it out the window"). Second, we examine the evidence presented at trial to determine whether, within the confines of the pertinent alternative or set of alternatives, the jury could reasonably have found guilt on the basis of conduct that was not unitary. *Sena*, 2020-NMSC-011, ¶ 54; *see also id.* ("[T]he *Foster* presumption is rebutted by evidence that each crime was completed before the other crime occurred."); *Franco*, 2005-NMSC-013, ¶ 7 ("[T]he proper analytical framework is whether 'the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses.' " (quoting *Swafford*, 1991-NMSC-043, ¶ 29)).

**{23}** The act of spitting in Officer Ramos's face would plainly fall within the ambit of the "abused" alternative under the given jury instruction. The relevant *Merriam-Webster* definition of abuse, which is consistent with ordinary usage, is "to use or treat so as to injure or damage" (to "(maltreat)") or "to attack in words[.]"[2] *Abuse*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/abuse (last visited Sep. 1, 2020). Therefore, applying *Foster*, we presume that the jury relied on the "abused" alternative in finding Defendant guilty. 1999-NMSC-007, ¶ 28. But "*Foster* does not require a further presumption that the same conduct was . . . relied upon by the jury in convicting [the d]efendant of each crime[,]" *Sena*, 2020-NMSC-011, ¶ 54, and we must therefore ask whether, under the "abusing" alternative, the "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Franco*, 2005-NMSC-013, ¶ 7 (internal quotation marks and citation omitted).

**{24}** As we view the record, spitting on Officer Ramos was the only basis upon which the jury could reasonably have found that Defendant "abused" Officer Ramos. Suggesting that the phrase "resisted or abused" in Section 30-22-1(D) and the given jury instruction describes a single concept, rather than two distinct sets of conduct, the State contends that the jury could have found Defendant guilty of "resisting or abusing" Officer Ramos by "refusing to follow commands to get down" or "resisting being handcuffed." We disagree. The State fails to explain why the word "or" as used in the statute and the instruction should be given anything other than its ordinary disjunctive meaning. *See generally State v. Bernard*, 2015-NMCA-089, ¶ 12, 355 P.3d 831 ("As a rule of construction, the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." (internal quotation marks and citation omitted)). Moreover, this Court has previously indicated that the statutory term "abuse" has a meaning distinct from other acts of resistance identified in Section 30-22-21, and we see no reason to depart from that understanding. *See State v. Wade*, 1983-NMCA-

---

[2]It is undisputed that the evidence in this case did not permit the jury to convict Defendant for verbally abusing Officer Ramos during and after his arrest.

084, ¶ 6, 100 N.M. 152, 667 P.2d 459 (noting that the crime of "[r]esisting, evading or obstructing an officer primarily consists of physical acts of resistance[,]" but that " '[a]buse[]'. . . also refers to speech, since one of the primary meanings of the word is to attack or injure with words" (internal quotation marks and citation omitted)). And, because we do not think that the ordinary meaning of the term "abuse" encompasses Defendant's conduct in failing to obey commands or struggling against Officer Ramos's attempts to arrest him, we reject the State's contention that the jury could have found that Defendant "abused" Officer Ramos through any conduct other than spitting.[3]

**{25}** Aware of no other factual basis upon which the jury could reasonably have concluded that Defendant "abused" Officer Ramos, we conclude that the *Foster* presumption is unrebutted and therefore that the jury relied on the same act of spitting to support both of its guilty verdicts. As noted above, neither party disputes that this reliance would result in a violation of double jeopardy. Under these circumstances, *Foster* holds, "the Double Jeopardy Clause . . . require[s] a conviction under a general verdict to be reversed[.]" 1999-NMSC-007, ¶ 27. Accordingly, we vacate Defendant's conviction for resisting, evading, or obstructing an officer.[4]

## III.    Sufficiency of the Evidence

**{26}** Finally, Defendant argues that the evidence was insufficient to support his conviction for battery on a peace officer. We disagree.

**{27}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532

---

3The State appears to contend that the fact that the prosecutor did not rely on Defendant's act of spitting in closing argument on the resisting charge should weigh in favor of a conclusion that the jury relied on Defendant's failure to obey or his struggle against being arrested in finding that Defendant "abused" Officer Ramos. It is unnecessary to address that argument because, as we have explained, neither act could reasonably have supported a finding of "abuse." To the extent that the State argues that the prosecutor's closing demonstrates that the jury relied on the "resisting" alternative of the instruction to find Defendant guilty, it fails to develop any argument or cite any authority to support the proposition that the State's narrow trial theory, as demonstrated in closing argument, is sufficient to make the *Foster* presumption inapplicable to the alternatives for conviction made possible by the given instructions. Thus, insofar as this argument was even made, we decline to consider it. *But cf. Franco*, 2005-NMSC-013, ¶¶ 7-11 (expressing disagreement with this Court's analysis "to the extent it suggest[ed that] the State's legal theory necessarily determines whether conduct may be considered unitary" because "[t]he conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial[,]" *id.* ¶ 7, and applying the *Foster* presumption to the alternatives provided by the given instructions (internal quotation marks and citation omitted)). *See generally Elane Photography*, 2013-NMSC-040, ¶ 70.

4Defendant argues that there was insufficient evidence to convict him of resisting, evading, or obstructing a peace officer. Having found that the conviction violated double jeopardy, we need not address this claim. Nor do we need to address Defendant's claim that there was a notice violation regarding the charge of resisting, evading, or obstructing a peace officer.

(internal quotation marks and citation omitted). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "The question is whether the . . . court's decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**{28}**    Section 30-22-24 provides that "[b]attery upon a peace officer is the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." In this case, the jury was given a case-specific version of UJI 14-2211 NMRA (2010, amended 2019) that required it to find that Defendant "intentionally touched or applied force to [Officer] Ramos by spitting on him." Substantial evidence showed that Defendant did just that. Defendant's conviction was supported by the testimony of all three police officers who testified at trial. Officer Ramos testified, "Officer [David] Scott picked [Defendant] up to where [Defendant] was like within like a foot of me[.] The side of my face was toward the front of his face, and [Defendant] spit in my face." Officer Ramos opined that the spitting was intentional on the basis of Defendant's combative attitude toward the arresting officers, Defendant's "facial gesture," and "the amount of spit [Officer Ramos] felt." Officer Francisco Hernandez testified that he saw Defendant "turn[] to his left and . . . spit on" Officer Ramos. Officer Hernandez elaborated that "[Defendant] turned his whole head towards Officer Ramos and saliva came out of [Defendant's] mouth and hit Officer Ramos' face. [Defendant] could have just walked straight or he could have looked to the right, but he intentionally turned toward Officer Ramos and spit in his face." Officer Scott testified that, although he did not see Defendant spit on Officer Ramos, he heard Officer Ramos state that "he had been spit on." Footage from Officer Ramos's lapel camera, introduced at trial as Exhibit 17, corroborates relevant portions of the officers' accounts. It depicts Defendant, immediately after he was handcuffed, turning his head to the left and saying, "That's what I thought you little bitch." Officer Ramos can be heard saying "he's spitting on me" within two seconds of Defendant's remark.

**{29}**    Based on this evidence, the jury could have reasonably concluded that Defendant acted intentionally when he spat on Officer Ramos. Although Defendant denied that he intentionally spat on anyone, "the jury [was] free to reject [his] version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We therefore affirm Defendant's conviction for battery on a peace officer.

**CONCLUSION**

**{30}**   We reverse Defendant's conviction for resisting, evading, or obstructing an officer and remand to the district court to vacate that conviction and resentence Defendant accordingly. We affirm in all other respects.

**{31}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**